## CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY v. MORRIS.

Appeal and Error—Special Findings by Jury—Conflicting Evidence—Railroads—Common Carriers—Transportation of Live Stock—Liability for Injuries—Negligence—Defective Car—Delayed Train—Shipper's Duties—Question for Jury—Contract of Shipment—New Trial—Statement of Grounds—Sufficiency—Judgment on Special Findings.

1. A special finding of the jury in connection with a general verdict will not be disturbed on error on the ground that it is not supported by the evidence, where the evidence upon the point is conflicting.

2. It is incumbent upon a railroad company as a carrier of live stock to furnish a car properly equipped to safely transport the animals to their destination, and it will be liable for injuries resulting from a failure in that respect.

3. The failure of a shipper of live stock to inspect the car furnished by the carrier for their transportation will not relieve the carrier from liability for injuries to the animals resulting from a defect in the car so furnished, since it is not the duty of the shipper to make such inspection.

4. In an action for injuries to live stock during transportation by a railroad company, delay in reaching an unloading point was material as bearing upon the question of proper equipment to handle the train and transport the animals with reasonable dispatch to where they could be unloaded and cared for.

5. While it is not every delay that entitles a shipper of live stock to damages for injuries sustained by the animals during transportation, a delay caused by the negligence of the carrier and contributing to the injuries will constitute a proximate cause, and support an action for damages.

6. The overloading of an engine, or a defective engine, which causes a delay, is evidence of negligence, and where such negligence contributes to the injury, damages are recoverable.

7. Whether the negligence of the carrier of live stock in furnishing a defective car and delay in transit constituted the proximate cause of injuries sustained by some of the animals during transportation by getting down and being trampled upon is a question for the jury.

8. The rights, duties and obligations created by a shipping contract are questions of law to be determined by the court.

9. Where a shipment is under the terms of an express contract between shipper and carrier, the rights of the parties must be measured thereby.

10. A shipment of horses having been made under an express written contract between the shipper and carrier, whether it was the duty of the shipper to go with the horses, or have someone do so, was a question of law, and improper to be submitted to the jury for a special finding.

11. Where an interrogatory for special finding in connection with a general verdict is improperly submitted because involving a question of law and not of fact, an answer thereto by the jury that there is no evidence upon it cannot be regarded as prejudicial.

12. Where, in connection with a general verdict against the carrier, in an action for injuries to horses during transportation, the jury returned a special finding the the injuries were caused by a damaged car and delayed train; *Held,* that under the verdict and finding the failure of the shipper to accompany the horses, or send someone with them, to care for them, as provided in the shipping contract, did not contribute to, and was not the proximate cause of the injuries.

13. Though a carrier is not liable for injuries to animals during transportation resulting solely from their vices and natural propensities, to constitute a defense on that ground it must appear that such vices and natural propensities, either alone or in conjunction with some innocent cause, was the proximate cause of the injuries, and the burden is on the carrier to show that fact.

14. A ground for new trial stated in the motion as "errors of law occurring at the trial" is too general and indefinite to present an alleged error in excluding offered evidence.

15. A motion for judgment upon a special finding of facts returned with a general verdict is properly denied, unless there is such an inconsistency between the special findings and general verdict as to render them irreconcilable.

16. A railroad company is liable as a carrier of live stock for the loss of an animal from its car, caused by its negligence in failing to furnish a car provided with a secure and safe door to prevent the stock from falling out or escaping.

17. Damages assessed by the jury for injuries to live stock during transportation by a common carrier are not excessive when

within the evidence and not exceeding the value placed upon the animals in the contract of shipment as a limitation upon the amount of recovery.

[Decided February 10, 1908.]                (93 Pac., 664.)

ERROR to the District Court, Sheridan County, HON. CARROLL H. PARMELEE, Judge.

A. J. Morris brought the action to recover damages for injuries occurring to certain horses while being transported by the defendant railroad company. From a judgment in favor of the plaintiff, the defendant prosecuted error. The facts are stated in the opinion.

*Lonabaugh & Wenzell* and *N. K. Griggs,* for plaintiff in error.

The car was greatly overcrowded, and this was the shipper's fault. There is no presumption of negligence as against defendant, because of the mere falling and injuring of the stock, as the mishap is properly to be attributed, under the evidence, alone to the wilful neglect of plaintiff in sending the shipment on from Aberdeen to Sheridan without anyone to care for them on the way. The evidence fails to show that the time the horses were on the car between Aberdeen and Sheridan, had anything to do with the condition of the horses. So, if plaintiff is to recover because his stock was hurt through negligence of defendant as to this time, then such negligence is to be wholly presumed, without a word of evidence. That a coupler was broken is admitted. However, there is no evidence that this coupler in anywise affected this shipment. On the contrary, the two employes, the conductor and fireman, who alone of the trainmen could be produced at the trial, positively state, and without dispute, that the car was properly equipped with air and carefully handled, with neither jar nor jerk all the way to Sheridan.

True, the car was placed at the rear of the train and true also that the defendant usually then placed such car in front.

However, there was no evidence showing, or tending to show, that the place where this car was placed had anything to do, even remotely, with the falling or injuring of these horses. Besides, the custom then of placing stock at the front was merely for the convenience of the defendant. A different custom now prevails. The court improperly excluded offered evidence to show that the rear of the train was a proper place for the car.

Where an act or omission charged does not constitute negligence *per se,* the party sought to be held responsible may, as a general rule, show that the act or omission was sanctioned by the usage or custom prevailing among those engaged in the same business or same kind of work. (Note to 41 A. & Eng. R. Cas. N. S., 326; Granaries Co. v. Ault, 106 N. W., 418; s. c., 107 N. W., 1015; O'Neil v. R. R. Co., 92 N. W., 731; Law v. Central & C. Co., 140 Fed., 558.)

The special finding that there was no evidence as to whether it was or was not the duty of plaintiff to go himself, or to send some one, to accompany his stock while in transit from Aberdeen to Sheridan, so as to prevent his horses from falling and being injured, is not only contrary to the fact, as shown by the testimony, but is flatly contradicted by the record here. The verdict of the jury, as to allowing damages on account of the shipment from Aberdeen to Sheridan, was unwarranted by any evidence. The verdict was opposed to the special finding that there was no testimony showing that the falling and injury of the horses was due to any rough or unusual handling by defendant of the car.

*Robert P. Parker,* for defendant in error.

If the car was overcrowded, the train crew assisted in loading, and knew the fact, and the company could not escape liability. (Kinnick v. Ry. Co., 69 Ia., 670; Normile v. R. & N. Co., 69 Pac., 930.) The evidence amply sustains the verdict.

SCOTT, JUSTICE.

This action was brought in the district court of Sheridan County by the defendant in error as plaintiff against the

plaintiff in error as defendant to recover damages for injury to horses while in transit over plaintiff in error's line of railway alleged to have been sustained by reason of the negligence of the company. The case was tried to a jury and a general verdict returned December 13, 1906, in favor of Morris and against the company for the sum of $295, as damages and interest thereon from October 16, 1905. At the same time the jury returned their separate answers to interrogatories which the court submitted to them as follows, viz.: "Int. 1. Was the car, containing plaintiff's horses, overloaded or overcrowded? Ans. No. Int. 2. Did the overloading or the overcrowding of the car in question cause, or contribute to, the falling or injuring of plaintiff's horses while in transit between Aberdeen and Sheridan? Ans. Not overcrowded or overloaded. Int. 3. Was it the duty of the plaintiff to go himself, or have someone else do so, along with the car of horses in question, while same was in transit between Aberdeen and Sheridan, to prevent his horses from falling and being trampled upon while in the car in such transit? Ans. No evidence to show. Int. 4. Was the falling or the injuring of plaintiff's horses, while in transit between Aberdeen and Sheridan, due to any act of negligence or want of care of defendant? And, if so, state specifically in what such negligence or want of care consisted and also state by whose testimony or by what evidence such negligence or want of care of defendant has been shown. Ans. Bad order car and delayed train. By defendant's witness and all others. Int 5. Was the falling or injury of plaintiff's horses, while in transit between Aberdeen and Sheridan, caused by any rough or unusual handling of the car containing such horses, and if so state specifically where such rough and unusual handling occurred and by whose testimony or by what evidence such fact is established. Ans. No testimony." A motion by the company for judgment on the special findings, as also a motion for a new trial, was overruled, and the company brings the case here on error.

1.   The company assigns as error the overruling of its motion for a new trial.   It is contended, first, that the evidence is insufficient to support the verdict; second, that the verdict is contrary to law; third, that it was entitled to judgment upon its motion therefor upon the special findings.

It is admitted in the pleadings that plaintiff in error is and was a railroad company operating a line of railroad at the time of the shipment of the horses from Billings, Mont., to St. Louis, Mo., and a common carrier transporting merchandise and live stock for hire, and that it received a car load of horses from the defendant in error as such common carrier and undertook to transport them over its line to their destination.

There was conflicting evidence upon the question as to whether the car was overloaded or overcrowded.   The jury, as seen by their special finding number one, found that it was not, and in view of the conflicting evidence upon that question such finding cannot be disturbed.   The jury having so answered the first interrogatory, it follows that their second finding is correct, for if there was no overloading or overcrowding of the stock in the car it is apparent that the injury to the animals cannot be attributed to that cause.

The evidence tended to show that upon the plaintiff's application the company on the 16th day of October, 1905, furnished him a car on its side track and at its loading pen at Aberdeen, Montana, for the purpose of shipping a car load of horses from that point to East St. Louis.   The car was loaded about eleven o'clock at night and shortly thereafter it was switched from the side track and attached to a freight train in rear of forty-seven car loads of lumber, and next forward of the caboose.   The car had a broken draw-bar on the front end, and was coupled to the car in front by a chain, there being about eighteen inches of slack whch was not taken up by the chain.   The train was equipped with air brakes, which were coupled on to the

damaged car.  The boiler of the engine was foaming and the train was overloaded, so that in climbing Parkman Hill in going south from Aberdeen the train crew had to divide the train and it was hauled in separate sections up that hill. The train was also delayed by having to wait at meeting points and did not reach Sheridan, a distance of forty miles from the starting point, until some time between 12:30 and 2:30 in the afternoon of the next day.   Upon arrival at Sheridan the car was allowed to stand in the yards from one and a half to one and three-quarter hours before the horses were unloaded.  It was then found that eight of the horses had been injured by having fallen in the car and having been trampled upon, one dying shortly thereafter; three were in such condition that they could not be shipped further and the remaining four were reloaded with the rest.   The three left in the stock yards at Sheridan were afterwards sold by the company, and the other four so injured were sold by the shipper at their destination at prices much below what they would have brought had they been free from injuries.  At Newcastle, Wyoming, the horses were again unloaded for water and feed, and with the exception of those left at Sheridan none were missing from the shipment.  The horses were again reloaded and upon arrival at Alliance, Nebraska, it was found that one horse was missing.  The door of the car was discovered to be partly open and the bull board down.

Neither the owner nor anyone in his behalf accompanied the horses to care for them and attend to their needs between Aberdeen and Sheridan, and this fact was known to the conductor who was in charge of the train.  No contract of shipment was signed at the initial point nor at the time of delivery and acceptance of the horses by the company for transportation.  The shipment, with the exception of the four head left at Sheridan, was accompanied from that point by a Mr. Towns as agent for the shipper, and upon leaving Sheridan he signed a shipping contract as agent for his principal.  The contract so signed pur-

ports to be dated at Parkman station on October 16, 1905, and the number of head of horses as stated therein is thirty-eight.   There was evidence on behalf of the defendant tending to show careful handling and management of the train, and the jury by their answer to interrogatory number five found that there was no testimony to show that the injury to plaintiff's horses between Aberdeen and Sheridan was due to any rough or unusual handling of the car.

It was incumbent upon the company to furnish a car properly equipped to safely transport the horses to their destination and it was liable for injuries resulting from a failure to do so.   (5 Am. & Eng. Ency. of Law (2d Ed.), 432; 6 Cyc., 440.)   It is conceded that the car which was furnished had a broken draw-bar, and it is not shown that the plaintiff was cognizant of that fact, nor was it his duty to inspect the car.   (Union Pac. Ry. Co. v. Rainey, 19 Colo., 225; Mason v. Mo. Pac. Ry. Co., 25 Mo. App., 473; Gulf, &c., Ry. Co. v. Trawick, 80 Tex., 270; 5 Am. & Eng. Ency. of Law, 435.)   According to the evidence on behalf of the plaintiff, there was eighteen inches of slack between the car in which the horses were and the next car ahead which was not taken up by the chain with which the coupling was made, and there was evidence tending to show that there would be more jarring and unsteadiness of the car by reason of such slack and consequently a greater tendency of the horses to get down in the car and be trampled upon than if the car had been properly equipped in this respect.   One of the witnesses for the defendant, who at the time was superintendent of the division of defendant's railroad on which the injuries occurred, testified that any defect in a train might cause more jarring and that a defective draw-bar would be a serious defect.

The length of time consumed by the train in going from Aberdeen to Sheridan, a distance of forty miles only, and the delay in reaching the latter point was properly before the jury as bearing upon the question of proper equipment.

to handle the train and transport the animals with reasonable dispatch to where they could be unloaded and cared for.   While it is not every delay that entitles a shipper to damages, yet if such delay was by reason of negligence of the company and contributed to the injury, it constituted a proximate cause and an action for damages would lie.   The overloadng an engine or a defective engine which causes a delay is evidence of negligence (Cleveland, &c., R. Co. v. Heath, 22 Ind. App., 47 (53 N. E., 198) ; Mich. So., &c., Ry. Co. v. McDonough, 21 Mich., 165 (4 Am. Rep., 466) ; McCreary v. R. Co., 109 Mo. App., 567 (83 S. W., 82), and if such negligence contributed to the injury there is no reason why damages should not be recoverable.

Negligence *per se* was not shown, but there was evidence sufficient to go to the jury and, therefore, sufficient to sustain a finding of negligence.   It was for the jury to say from all the evidence whether such negligence constituted the proximate cause of the injury to the animals and by their special finding number four they found the proximate causes to be "bad order car and delayed train."   If the damaged car and the delay in transit increased the hazzard and risk of injury to the horses by getting down and being trampled upon, and injury also resulted in inability to unload the animals at an earlier hour, this court cannot say that the jury's finding is wrong.   It would seem reasonable that the longer they were in transit and the consequent delay in getting those up which had fallen, together with the character and kind of animals, and their need of care and attention should all be taken into consideration in determining whether such delay contributed to and was a proximate cause of their injury.   This was a question of fact for the jury to determine and we are of the opinion that the special finding number four is not contrary to the evidence, and that it is sustained by sufficient evidence.

It is contended that the verdict is contrary to law, and in support of this contention it is argued that the plaintiff was guilty of contributory negligence in failing to go or

send someone along with the horses and attend to their
needs and wants during transit between Aberdeen and
Sheridan; and also that, owing to the natural propensities
of the horses and their liability to injure each other, the in-
juries must be attributed to such propensities or vice and
that the company, by the terms of the contract, was not
liable therefor.

The contract of shipment provided that the company
should furnish free transportation for the owner or his
agent to accompany the horses, and that he or his agent
should have sole charge of the car and horses, and that the
company should not be responsible for such attention and
care.

The evidence is that the plaintiff and a stock inspector,
together with the train crew, loaded the horses at Aberdeen.
The plaintiff testifies that after loading them he left the car
and horses in charge of the train crew.  The evidence of
the conductor who was in charge of the train is to the
effect that he knew he was not carrying anyone on the part
of the plaintiff to care for the horses between Aberdeen and
Sheridan.

The existence of the contract was one of fact and was
admitted by the parties.  The rights, duties and obligations
created thereby were questions of law to be determined by
the court.  There was some evidence of a custom of stock-
men to accompany or send someone along to care for their
stock while in transit, but the shipment was under the terms
of an express contract, and the rights of the parties must be
measured thereby.  A custom to that effect and a failure to
comply therewith was not pleaded.  The jury by their an-
swer to interrogatory number three stated that there was
no evidence to show that it was the duty of the plaintiff to
go, or have someone else do so, along with the car of horses
while same was in transit between Aberdeen and Sheridan
to prevent his horses from falling or being trampled upon
while in the car in such transit.  This question, we think, is
one of law and not of fact, and that it was, therefore, im-

properly submitted to the jury, and its answer thereto—that there was no evidence—cannot be regarded as prejudicial to the defendant for that reason. That this was a question of law was recognized by the court in its instruction to the jury as follows: "You are instructed that the duty of looking after the horses in question, while on the way between Aberdeen and Sheridan devolved on the plaintiff. Hence, if he allowed such horses to be transported between those points, without going along himself or having someone do so, to look after them on the way and some of them got down and were injured because of such want of care, he cannot recover in this action." In another instruction the jury were told that, in order for the plaintiff to recover for injury to his horses, he must affirmatively prove by a preponderance of the testimony that they were injured alone through the negligence of the company. The failure of the plaintiff to accompany or send someone along to care for his horses under the verdict and finding of the jury neither contributed to nor was it the proximate cause of the injuries.

If the injuries to the horses were due solely to their vices and natural propensities, then the company was not liable therefor, but in order for this to be a defense it must appear that such vices or propensities constituted the sole proximate cause of the injuries. (5 Am. & Eng. Ency. of Law, 445.) It is true that the evidence shows that horses of this character are nervous and excitable, and would be more liable to get down in the car for the first hundred miles of the journey and that that fact was known to the shipper as well as the company. The jury did not find that the natural propensities or vices of the animals was the sole proximate cause of the injuries, and upon the whole evidence it was for them to determine what the proximate cause of the injuries was (Gibson v. National S. S. Co., 8 Misc. Rep. N. Y. Super. Ct.), 22), and to have been the proximate cause, as a defense, the injuries must have occurred by reason of the natural propensities alone or in conjunction with some innocent cause (Chicago, &c., R. Co. v. Harmon,

12 Ill. App., 54), and the burden was upon the company to show that fact. (5 Cyc., 469.) The jury by their special finding found the proximate cause of the injuries to have been bad order of car and delayed train. We do not think that the injuries could upon the evidence have been the result solely of the natural propensities of the animals either alone or in conjunction with an innocent cause, for the damaged car and delayed train were not nor could they be considered an innocent cause. We are of the opinion that the verdict is sustained by sufficient evidence and that it is not contrary to law.

2. It is urged in argument that the court erred in refusing to permit the defendant to show that it was the custom to attach carloads of stock at the rear end of the train. The motion for a new trial does not specify this ruling as a ground therefor, unless it be included in the general ground defined in the statute and alleged in the motion as "errors of law occurring at the trial." The ground is too general and indefinite and upon the record it does not affirmatively appear that the specific question here argued was brought directly to the lower court's attention. (Boburg v. Prahl, 3 Wyo., 325.) While it may have been argued and submitted to that court, the only way of showing that fact and presenting the question for review is by setting out and specifying in the motion the particular error and matter complained of. (Sec. 853, Elliott on App. Proc.)

3. It is assigned as error that the court erred in overruling the company's motion for judgment on the special finding of facts.

The interrogatories were submitted to the jury to be answered and returned with their general verdict in pursuance to the provisions of Section 3656, Revised Statutes 1899. Section 3657, Revised Statutes 1899, is as follows: "When the special finding of facts is inconsistent with the general verdict, the former shall control the latter, and the court may give judgment accordingly."

The right to a judgment upon the special finding of facts under these provisions of the statute is limited to those cases where there is an inconsistency between the special finding and the general verdict, and unless there is such an inconsistency as to be irreconcilable such a motion should be denied. (Davis v. Turner, 69 O. St., 101, 116.) The special finding of facts is reconcilable with the general verdict, and that being the case the company was not in a position to ask affirmative action on the part of the court upon its motion for judgment based upon such finding.

4. The correctness of the instructions is not here questioned, nor is the right to recover the value of the horse which was lost from the car between Newcastle and Alliance seriously questioned. There was some conflicting evidence as to whether the horse was loaded with the others, but that was a question for the jury, and if so loaded the condition of the door at the time the horse was found to be missing would be sufficient evidence to sustain the verdict on the ground of negligence on the part of the company in failing to furnish a car provided with a secure and safe door to prevent the horses from falling out or escaping. (Smith v. New Haven, &c., R. Co., 12 Allen (Mass.), 531; 90 Am. Dec., 166; Pratt v. Ogdenburg, &c., R. Co., 102 Mass., 557; Indianapolis, &c., R. Co. v. Strain, 81 Ill., 504; Betts v. Chicago, &c., R. Co., 92 Ia., 343; Central of Georgia R. Co. v. James, 117 Ga., 832; Root v. New York, &c., R. R. Co., 83 Hun, 111.)

5. It is urged that the damage awarded by the jury is excessive. The damage was variously estimated by different witnesses and the amount found by the jury was within the evidence and does not exceed the value placed upon the animals in the contract of shipment and to which value the plaintiff limited the amount of his recovery for injury to or loss of the horses while in transit. The argument upon this question seems to be that a recovery, if at all, must be for the value of the horse which was lost from the car, and that there was no liability for damage for injury

to the horses while in transit between Aberdeen and Sheridan. This contention, as we have seen, is not correct, for the plaintiff was entitled to recover for injuries to them as well. We are of the opinion that the damage assessed by the jury is not excessive. No prejudicial error appearing in the record, the judgment will be affirmed. *Affirmed.*

POTTER, C. J., and BEARD, J., concur.