Charles B. McClanahan,

*Plaintiff and Respondent*

**vs.**

Woodward Construction Company, a Wyoming corporation,

*Defendant and Appellant.*

(No. 2764; October 15th, 1957; 316 Pac. (2d) 337.)

364

For the plaintiff and respondent, the cause was submitted upon the brief and oral argument of Mr. Albert E. Nelson and Mr. Kenneth G. Hamm, of Rock Springs, Wyoming.

Heard before Blume, C.J., and Harnsberger and Parker, J.J.

368

OPINION

Mr. Justice HARNSBERGER delivered the opinion of this court.

The defendant, Woodward Construction Company, appeals from a judgment entered in accordance with a jury's verdict, awarding plaintiff, Charles B. McClanahan, $10,000 damages for injuries and loss sustained as a result of an accident alleged to have been caused by negligent operation of defendant's oil distributor truck when loaded to an approximate of 10 tons and engaged in oiling city streets. The scene of the accident was at a place where the street being oiled, ended by its intersection with a cross street, thus making the two streets somewhat resemble the letter "T". The street was being oiled for a distance of two blocks and was 40 feet wide. This required the oiling truck to make four trips or runs, oiling a strip about 10 feet in width each time. The cross street was 51.9 feet in width. In order to apply the proper amount of oil, it was necessary for the oil distributor truck to proceed in a straight line and to maintain a constant speed of 17 to 18 miles per hour all the time the oil was being applied and until its rear end reached the closest line of the cross street, at which point an attendant would shut off the flow of oil and the truck driver would

bring the equipment to a full stop. The truck would then be backed up a sufficient distance to permit the vehicle to turn into the cross street and continue back around two blocks in order to make another oiling run.

The oiling equipment was 24 feet 4 inches in length and because it was impracticable to turn the vehicle either to the right or to the left, in the short distance available after completing its oiling run at the required speed, the truck had to be completely stopped within a maximum distance of 27 feet 6 inches, after the oil flow was shut off and the brakes applied, or it would overrun the curb line on the opposite side of the cross street and onto the sidewalk. Two runs had been made in this manner, with the truck being brought to a full stop with the front end of the truck coming to within from 2½ feet to 5 feet of the opposite curb. On the third trip an emergency stop was made about a block before the cross street was reached. The truck was backed up about 6 feet over the freshly oiled surface and then the third run was resumed. However, this time, when the truck passed into the intersection and the driver applied the foot brakes as the oil flow was cut off, he heard a loud noise and the foot brake he was using went ineffectively to the floor board. The driver did not sound the horn, give any other warning, or attempt to stop the truck by using the emergency or hand brake, but he testified that the emergency brake would not have stopped the truck had it been applied and that he did not have time to use it. Instead, the driver turned the truck to the left running up upon the sidewalk along the opposite side of the cross street where plaintiff claimed it struck and injured him as he was running down the walk, trying to escape from being hit by it. It also appears the appellant's watch-

man at the intersection had permitted pedestrians to congregate on and about a portion of the cross street which was to the right of the truck at the intersection, so that they blocked passage to the right on the cross street and prevented the driver from turning in that direction.

In claiming damages from the defendant, the plaintiff charged the defendant with several specific negligent acts or omissions, namely: 1. Failing to keep the truck under control; 2. Operating the truck when its brakes were not in good working order; 3. Failing to keep a proper lookout; 4. Driving the truck onto the pedestrian sidewalk and colliding with plaintiff; 5. Failing to give any warning that truck was out of control; 6. Failing to turn truck to right or left so as to avoid colliding with plaintiff; 7. Failing to maintain and keep the truck's brakes in proper mechanical condition; 8. Failing to inspect truck and determine if brakes were in good working condition.

The defendant denied these charges and affirmatively pleaded a latent defect in the braking mechanism was the proximate cause of the brake failure and the resulting collision with and injury to plaintiff.

The plaintiff made denial of the affirmative defense and further charged that the emergency brake was inadequate to control the vehicle and that it was negligently maintained.

In this appeal, appellant insists its negligence was not shown; first, as the truck went out of control due to mechanical failure for which appellant was not responsible; second, because there was no evidence of negligence on its part; and, third, because the jury's answers to interrogatories were inconsistent with the general verdict.

The appellant asserts the court erred in failing to grant its motion for a directed verdict made at the close of the case, arguing there was insufficient evidence of any negligence on its part to submit to the jury. This requires our consideration of all the evidence in the light of plaintiff's allegations of defendant's negligence. Furthermore, as the appellant has categorically attacked the sufficiency of evidence necessary to sustain each of plaintiff's charges, we shall briefly discuss each of the appellant's specific representations.

To start with, the appellant erroneously assumes there was unrefuted testimony showing a latent defect in the rivets of the service or foot brake assembly which caused the brake mechanism to fail and the vehicle to go out of control. This assumption is not borne out. The evidence only shows that some of the foot brake's rivets were shorn off. It is somewhat doubtful if there was any evidence of a defect of any kind in the rivets, although the jury found they were defective. The fact that the rivets were shorn off carries with it no implication they were defective. So far as the evidence goes, they may have been and possibly they were completely perfect. It might also be that the whole service brake mechanism was in perfect condition—a condition sufficiently good for their adequate functioning under normal operational conditions—yet with rivets of insufficient strength, size or number to meet the requirements of the excessive braking power made necessary by the manner in which the vehicle was being used. In addition, there is no evidence and no finding as to the *nature* of the supposed defect in the rivets. Upon its erroneous assumption, the appellant concludes the brake failure sufficiently explains and refutes the first charge of failing to keep the truck under control, and the same was thereby excused. As will later be

shown, there were a number of matters affecting the duty to keep the truck under control other than the mere fact that the rivets were shorn off. Hence, al-though it was undisputed that the brake failure was caused by the shearing of the rivets this did not warrant removal from the jury the determination of the ultimate fact of the defendant's liability for failure to keep the truck under control.

The claim there was no evidence that the truck was being operated when its brakes were not in good operating condition disregards the plain fact that evidence showed the service brakes did fail to control the truck at the time of the accident, notwithstanding they had successfully stopped the truck on three previous occasions.

The appellant's contention the emergency rule defeated plaintiff's charge that a proper lookout was not kept does not take into account it was the jury's province to determine from all the facts and circumstances, whether the emergency was one created by defendant. See 60 C.J.S. Motor Vehicles § 257c, pp. 628, 629, 630; 1 Blashfield, Cyclopedia of Automobile Law and Practice, Part 2, Perm.ed., § 669, p. 547.

The charge of negligence in defendant's truck striking plaintiff is sought to be avoided for the same reasons noted with respect to the brake failure. This we have not accepted.

The charge of negligence in failing to give warning is said to fail because of the extreme shortness of time as shown by the evidence. Of course, this was purely a matter for the jury's determination.

The charge of negligence in failing to avoid colliding

with the plaintiff is attempted to be avoided because of the brake failure. To this we have given answer.

The charge of failure to maintain and keep the brakes in proper mechanical condition is claimed to have been refuted by undisputed testimony, and the charge of failure to inspect the truck and determine if brakes were in good working condition, as well as the charge that the Company was negligent in not equipping the vehicle with brakes of sufficient power and efficiency to stop and control the truck, are said to be without support in evidence. But again what we have said with respect to the appellant's contention on the question of brake failure is also applicable to these claims, to say nothing about the emergency brake question about which more will be said later on.

Lastly, the plaintiff's charge that there was negligence in failure to use the emergency brake is brushed aside by the defendant on the theory that there was a lack of time to apply that brake and the appellant's admission that in any event the emergency brake was insufficient to stop the loaded truck. Here the question of sufficient time was one for the jury, and the appellant's admission of the inadequacy of the emergency brake completely destroys the merit of the contention that the motion was improperly denied.

The second error claimed is that the court entered judgment for plaintiff in accordance with the jury's verdict, notwithstanding the jury had given answers to submitted interrogatories which appellant asserts are inconsistent with the general verdict.

In submitting the case to the jury, the court gave an Instruction numbered 2, the fifth paragraph of which is as follows:

"If you find from a preponderance of the evidence that the accident was caused by a latent defect in defendant's truck, as herein defined, and you further find that said latent defect was the proximate cause of the accident and the injuries claimed by plaintiff, then you will bring in a verdict for the defendant".

The definition of a latent defect referred to is as follows: "You are instructed that a latent defect is a defect which could not have been discovered by ordinary and reasonable inspection and care".

In addition, the following interrogatories entitled "Special Findings" were given to the jury:

"The Jury will answer the following questions and have the same signed by the Foreman of the Jury, and return the Special Findings into Court along with your verdict:

"1. Had the brakes on defendant's oil distributor truck functioned properly prior to the accident?

    'YES'

_____       _____
      YES                             NO

"2. Were the rivets in the brake back-up plate defective?

    'YES'

_____       _____
      YES                             NO

"3. Did defendant Woodward Construction Company know, or in the exercise of ordinary care should defendant have known, of the defective rivets in the brake back-up plate in the right rear brake assembly of the oil distributor truck?

                                    'NO'

_____       _____
      YES                             NO

"4. Was the shearing off of the rivets on the brake back-up plate, and the failure of the brakes, the proximate cause of the accident and injury sustained by plaintiff?

'YES'

YES                                    NO

Question 4, as thus submitted, asked the jury to select either one or the other of the indicated answers. Had the jury chosen the "No" answer, it obviously would have ignored undisputed evidence. Their only alternative was to choose the "Yes" answer. In such a circumstance it would be too narrow a view for us to conclude that answer meant anything more than that they accepted uncontradicted evidence. The difficulty arises from the form of the question, which, we understand, was submitted at the instance of appellant. Whether so intended or not, the interrogatory is somewhat ingenious because its correct answer under the evidence might technically be understood as limiting the proximate cause of the accident to the single occurrence described by the question. We are not disposed to give it such an interpretation.

Webster's New International Dictionary, 2d ed., Unabridged, 1935, p. 2617, gives rather exhaustive explanation of article "the", but the following portion is considered sufficient to illustrate its generally accepted definition:

"THE * * * A demonstrative adjective used chiefly before a noun to individualize, specialize, or generalize its meaning, having a force thus distinguished from the indefinite distributive force of *a, an,* and from the abstract force of the unqualified noun. Thus, *the* man points to a particular man, as distinguished from *a* man and from the generic *man*".

Similarly, Webster's New Collegiate Dictionary, 1956, p. 880, says:

"THE * * * 1. That (person or thing), in particular; as, to pick out *the* culprit.

And Webster's New World Dictionary of the American Language, College ed., 1957, p. 1509, says:

"THE * * * 1. *the* (as opposed to *a, an*) is used to refer to a particular person, thing, or group, as: 1, that (one) being spoken of or already mentioned: as, the story ended".

If all we had to do was give grammatical construction to the words used, we might agree that as the word "the" is an article of limitation, its use excluded everything else as a proximate cause of the accident. But we must try to reconcile the answer to the interrogatory with the general verdict, if that is at all possible. In this case, the only interrogatories propounded were questions dealing with but one of the several charges of defendant's negligence upon which plaintiff relied. On the other hand, the jury was called upon to render a verdict upon its consideration of each and every one of those charges of negligence. None of the charges were withdrawn from the jury and no special verdict was requested with findings on each material issue involved. See 53 Am.Jur. Trial § 1063, p. 736. In such a case, the answer given to the interrogatory should not be deemed to be restrictive of the general verdict, inasmuch as the questions did not completely cover the whole field of issues, any one of which, if found in plaintiff's favor, would have supported the general verdict.

To otherwise restate the matter, it might be said that if the jury's affirmative answer to the fourth in-

terrogatory is interpreted in strict grammatical sense, the use of the word "the" excluded every other circumstance as a proximate cause of the accident. However, when consideration is given to factors other than mere grammatical influence, we feel it more fair and just to accept the answer as merely meaning the jury believed the shearing off of rivets and consequent brake failure was but one proximate cause. No other interpretation is compatible with the jury's verdict which awarded the plaintiff damages for his injuries, and, as stated, we are obliged to reconcile the two wherever that is possible.

In Chicago, B. & Q. R. Co. v. Morris, 16 Wyo. 308, 319, 320, 93 P. 664, 667, the court quoted what is now § 3-2420, W.C.S. 1945, which provides: "When the special finding of facts is inconsistent with the general verdict, the former shall control the latter, and the court may give judgment accordingly", and then said: "The right to a judgment upon the special finding of facts under these provisions of the statute is limited to those cases where there is an inconsistency between the special finding and the general verdict, and, unless there is such an inconsistency as to be irreconcilable, such a motion should be denied."

See also Davis v. Turner, 69 Ohio St. 101, 116, 68 N.E. 819; Board of Com'rs. of Mercer County v. Deitsch, 94 Ohio St. 1, 113 N.E. 745; Mason Tire & Rubber Co. v. Lansinger, 108 Ohio St. 377, 140 N.E. 770, 771; Ford Motor Co. v. Potomac Ins. Co., 27 Ohio App. 279, 161 N.E. 230, 231, 232; Predergast v. Ginsburg, 119 Ohio St. 360, 164 N.E. 345, 346; 53 Am.Jur. Trial § 1083, pp. 751, 752; and particularly Globe Indemnity Co. v. Wassman, 120 Ohio St. 72, 165 N.E. 579, 584, where question of performance and estoppel were in issue. There was no evidence to support the claim of performance, but there was evidence to support the claim of estop-

pel. The defendant requested the court to submit to the jury three interrogatories, all relating to the issue of performance only. The court submitted the first question which inquired if a paper indicating performance had been given and the jury answered "Yes". But the court refused to submit the second question which asked what the paper contained, and also refused to submit the third question which inquired if their verdict was based on the answer given to the first question. A general verdict was rendered in plaintiff's favor and the defendant claimed it was inconsistent with the answer given to the first question. The Supreme Court of Ohio upheld the verdict and said in part:

"These findings related to the issue of performance only, and did not touch the issue of estoppel. The verdict was a general one in favor of the plaintiff upon both issues, either of which, if proven, would sustain recovery. Had the jury answered the interrogatories the surety company desired still such answers would not control, nor would they be inconsistent with the general verdict; and it is only when the special findings are repugnant to the general verdict that the former control the latter; and the conflict, if any there be, must be clear and irreconcilable. Davis v. Turner, 69 Ohio St. 101, 68 N.E. 819 ;Central Gas Co. v. Hope Oil Co., 113 Ohio St. 354, 149 N.E. 386. The jury may have truthfully answered that they based their verdict on performance; but they could just as truthfully have answered that they also based it on estoppel; and the purport of the general verdict is a finding upon both of those issues in favor of the plaintiffs. Had the interrogatories been so framed as to elicit findings that the verdict was based **solely** on the issue of performance, they should have been submitted to the jury; and, if the special findings would elicit the fact that the verdict was based solely on an issue which lacked proof to sustain it, it would have been the duty of the trial court to submit them, as such a finding would necessarily have controlled the general verdict".

Also quite persuasive is Cincinnati, I., St. L. & C. Ry. Co. v. Smock, 133 Ind. 411, 33 N.E. 108, 109, 110, where the court stated:

"The rule is that every reasonable presumption will be indulged in favor of the general verdict, and if, by any reasonable hypothesis, the answer can be reconciled with the general verdict, the latter must stand. They override the general verdict only when both cannot stand together, the antagonism being such, upon the face of the record, and is beyond the possibility of being removed by any evidence legitimately admissible under the issues in the cause".

The fifth paragraph of Instruction numbered 2 told the jury that if they found a *latent* defect in defendant's *truck* was the proximate cause of the accident, they should bring in a verdict for the defendant. Another instruction defined a "latent defect" as one which could not have been discovered by ordinary and reasonable inspection and care. None of the four questions submitted to the jury specifically asked about a latent defect of the *truck*, nor did they inquire about a *latent* defect of the brake rivets. The most that can be said in the light of the definition given of a latent defect is that an *inference* might be drawn from the answer given to question No. 3 that the defect in the rivets found by the answer No. 2, was latent, although it could also be concluded from these answers that while the defective condition of the rivets was patent, the defendant did not know, nor should it have known, by the exercise of ordinary care that they were defective. In other words, the jury may have considered that ordinary care was exercised inasmuch as the brakes seemed to be functioning up to the time of the accident. But the instruction itself was bad, as it unequivocally directed a verdict for the defendant if the jury made findings favorable to the defendant as to but one of the several

charges of negligence against which it was called upon to defend. The instruction also improperly used the limiting article "the" in its reference to proximate cause, without sufficiently calling to the jury's attention the other acts and omissions of the defendant, upon which plaintiff was relying to establish defendant's liability. The point is that even though the truck did go out of control due to a mechanical failure (which was undoubtedly a proximate cause of the accident), that fact by itself did not relieve the defendant of other responsibilities and duties with which it was charged, although faced with a sudden mechanical failure.

The method of operation, the type, size and weight of the equipment employed and the area involved combined to create a dangerous condition for which the defendant was responsible, and which required a degree of care and the exercise of a caution beyond that which would have sufficed for the operation of the same vehicle under normal circumstances. See 1 Blashfield, Cyclopedia of Automobile Law and Practice, Part 2, Perm. ed., § 633, p. 497; 65 C.J.S. Negligence § 84, p. 592, and cited authorities. A speed of 17 to 18 miles per hour was not in itself an excessive speed any more than an approximate weight of 10 tons of load and equipment was in itself an excessive weight. But when this heavy equipment traveling at about 18 miles per hour had to be stopped within a maximum distance of some 27 feet, a more adequate provision for braking the vehicle was required than that which would enable it to stop within the 30 feet fixed by statute for stopping a truck by application of service brakes, or within 55 feet by application of hand (or emergency) brake when traveling at 20 miles per hour. See § 60-608 (b) 1 and 2, W.C.S. 1945. The jury might well have believed that such operational stress and strain required more than ordinary care and closer attention to the condition of the brakes,

and more rigid and frequent inspection than would usually have sufficed to relieve the owner against claims of negligence.

With respect to the vehicle's emergency brake, the testimony of the driver is revealing. He stated it would have done no good to have used the emergency brake, although, according to the plat in evidence, the plaintiff was struck about 60 feet from the point where the service brakes failed. This witness was in the best position to know the condition of that brake and also to know how necessary it was to bring the equipment to a full stop within a maximum distance of some 27 feet. This was not a case where there was an alternative of turning either to the right or left to avoid accident in the face of an emergency. It was necessary to stop at all events or invade pedestrian area with the risk of incurring liability. Notwithstanding this, the driver's testimony is that he knew the emergency brake was inadequate to make this required stop when and if his service brakes failed.

These considerations may have been, and judging from the verdict they probably were, within the thinking of the jurors when their answer to the interrogatory said the sudden failure of the service brakes was the proximate cause of the accident, while their general verdict found the defendant guilty of negligence notwithstanding. We cannot say that the confessed insufficiency of the brake provided for use in just such an emergency was not considered by the jury to also have been a proximate cause of the accident. Nor would the driver's saying he had no time to apply the emergency brake have necessarily been deemed by the jury to be a sufficient excuse in the light of circumstances which should have alerted him to be prepared for such an emergency. Again see 1 Blashfield, Cyclopedia of

Automobile Law and Practice, Part 2, Perm.ed., § 669, p. 547; 60 C.J.S. Motor Vehicles § 257c, pp. 628, 629, 630, and authorities cited. As we have indicated, the method of operation, the type of equipment and the surrounding conditions demanded a special alertness on the part of the driver. The knowledge that the equipment would undergo such unusual stress should have bred an awareness of the possibility, if not of the probability, of the happening of that which did actually occur. This knowledge should have caused the owner to provide an emergency braking equipment which would have been adequate to meet such an emergency, and it should also have prepared the driver to instantly make use of such emergency equipment when necessary.

Because of what has been pointed out, we must hold that the answers given to the interrogatories were not inconsistent but are reconcilable with the jury's general verdict; that the fifth paragraph of Instruction No. 2 was improper in that it directed a verdict for the defendant if a finding were made in defendant's favor on but one of several of plaintiff's allegations of defendant's negligence when there was evidence before the jury which would have supported their verdict in plaintiff's favor upon such other charges of negligence. In consequence, the judgment of the trial court rendered in accordance with the jury's general verdict in favor of the plaintiff and against the defendant is affirmed.

Affirmed.