Robert AUFLICK, Appellant
(Plaintiff below),

v.

Louis A. DICKSON, Rocky Mountain Truck-
ing Company, Lester Loehr, and B. F.
Walker Trucking Company, Appellees (De-
fendants below).

No. 3618.

Supreme Court of Wyoming.

April 16, 1968.

Raymond B. Whitaker, John Burk, Cas-
per, for appellant.

R. R. Bostwick, of Murane, Bostwick, Mc-
Daniel & Scott, William H. Brown, of
Brown, Drew, Apostolos, Barton & Massey,
Casper, for appellees.

Before HARNSBERGER, C. J., and
GRAY, McINTYRE, and PARKER, JJ.

Mr. Chief Justice HARNSBERGER de-
livered the opinion of the court.

This action is for damages claimed to
have been sustained by plaintiff in a rear
end car-truck collision. At issue were de-
fendants' negligence and plaintiff's contrib-
utory negligence. Upon conclusion of the

evidence and defendants' motion, the jury was instructed to and did render a verdict for each of the four defendants, and the court entered its judgment accordingly.

Plaintiff appeals.

From uncontradicted evidence it appears a vehicle, hereinafter referred to as the "May" car, traveling north ran into and demolished the right-hand railing of a bridge, then came to a stop at its extreme north end, where it remained, hanging half on and half off the edge of the bridge. Defendant Loehr, driving a truck belonging to defendant Walker, approaching the scene from the north and traveling south, witnessed the accident, stopped his vehicle in its south-bound lane about 150 feet from the north edge of the bridge, dismounted, and went to the bridge. Seeing a vehicle coming from the south going north, he flagged it down. This vehicle was the truck of Rocky Mountain Trucking Company driven by defendant Dickson. The Dickson-driven truck stopped about 24 feet from the south side of the bridge. Thereafter, plaintiff Auflick, coming from the south, driving north in a Ford car, collided with the rear of the Rocky Mountain truck demolishing his car and injuring himself.

In preface to its order directing the verdict, the court commented that the "B. F. Walker truck saw it [the May car accident], had to stop because he couldn't get across the bridge possibly or he would have damaged maybe that other car. The Rocky Mountain truck had to stop because the [May] car was teetering in his lane. Both trucks were loaded; neither were empty. It was night and snow in the barrow pit." The court then said:

" * * * but granting that they were negligent in where they stopped, and granting that they were negligent in failing to get off, just for the sake of argument, I can't see how you can get around the fact that this plaintiff, as a matter of law, was contributorily negligent. He certainly should have seen the lights on these vehicles [the trucks]. Every person that came up there was alerted that there was an unusual situation that required caution and everyone of them took it and no one had any problem. * * * "

Testimony favorable to plaintiff varied considerably as to the placement, kind, and number of lights upon the Rocky Mountain truck. Some witnesses said those lights were partially obscured by dirt, et cetera. Other of plaintiff's witnesses testified that from distances of approximately 900 feet away, as they came upon the scene from the south heading north, they saw lights. Although part of these witnesses seemed to think those lights were from the Auflick car, both patrolmen who investigated the accident shortly after its occurrence testified positively and without contradiction that the battery of the Auflick car was completely demolished. This admits of but one logical conclusion—the lights which plaintiff's witnesses testified came from the Auflick car must have been reflections from lights of approaching vehicles.

The lighting at the scene of the accident is important in three aspects. First, as it affects the question of defendants' compliance with requirements of our statutes relating to the number, kind, and placement of lights upon their vehicles; second, as bearing upon the question of whether there was such illumination of the May accident scene as warned of a dangerous situation and which should have alerted Auflick and enabled him to avoid his collision; and third, whether, as contended, plaintiff was blinded by lights from the Walker truck.

The applicable statute is § 31–179, W.S. 1957 (now § 31–179, W.S.1957, C.1967), which provides:

"In addition to other equipment required in this act, the following vehicles shall be equipped as herein stated under the conditions stated in section 110 [§ 31–178].

"(a) On every bus or truck, whatever its size, there shall be the following: On the rear, two reflectors, one at each side, and one stop light.

"(b) On every bus or truck 80 inches or more in over-all width, in addition to the requirements in paragraph (a):

"On the front, two clearance lamps, one at each side.

"On the rear, two clearance lamps, one at each side.

"On each side, two side marker lamps, one at or near the front and one at or near the rear.

"On each side, two reflectors, one at or near the front and one at or near the rear.

"(c) On every truck tractor:

"On the front, two clearance lamps, one at each side.

"On the rear, one stop light.

"(d) On every trailer or semitrailer having a gross weight in excess of 3,000 pounds:

"On the front, two clearance lamps, one at each side.

"On each side, two side marker lamps, one at or near the front and one at or near the rear.

"On each side, two reflectors, one at or near the front and one at or near the rear.

"On the rear, two clearance lamps, one at each side, also two reflectors, one at each side, and one stop light.

"(e) On every pole trailer in excess of 3,000 pounds gross weight:

"On each side, one side marker lamp and one clearance lamp which may be in combination, to show to the front, side, and rear.

"On the rear of the pole trailer or load, two reflectors, one at each side.

"(f) On every trailer, semitrailer, or pole trailer weighing 3,000 pounds gross or less:

"On the rear, two reflectors, one on each side.

"If any trailer or semitrailer is so loaded or is of such dimensions as to obscure the stop light on the towing vehicle, then such vehicle shall also be equipped with one stop light."

Taking the widely varied testimonies most favorable to plaintiff respecting the lighting of the trucks, they failed to show defendants' trucks were not lawfully equipped with proper lights or that these lights were not turned on when Auflick was approaching.

In any event, as the court's conclusion was primarily predicated upon the contributory negligence of Auflick rather than the absence of negligence of defendants, this first question is of relatively minor importance.

Plaintiff's evidence emphasized the Walker truck lights were numerous, and the record is clear that, following the accident, drivers of other vehicles which were traveling at speeds as great as from 70 to 75 miles per hour observed these lights in time to safely stop by ordinary braking procedure.

The only evidence as to the lighting of the trucks *at the time of the collision* was given by defendants Loehr and Dickson, and *their testimony was uncontradicted.* Auflick, the only other person present at the time, said he had no recollection of the occurrence. Dickson saw the Walker truck and its illumination of the car teetering on the edge of the bridge and was able to bring his heavily loaded truck to a safe stop. All of plaintiff's witnesses who approached the scene from the south after the accident observed the scene in sufficient time to avoid collision.

But counsel says plaintiff was blinded by the headlights of the Walker truck, its "spotlights being aimed straight at him, and the distraction of the truck [Walker's] appearing as a Christmas tree, which was very well lit and could be seen for miles with considerable lights that drew your attention and dimmed the objects in your lane." Besides this being a somewhat inaccurate statement, it is also anamolous. If the scene of the May car accident, which included the presence of both the Walker and the Rocky Mountain trucks, was "very well lit and could be seen for miles with considerable lights that drew your attention," there was clearly that to be seen

which plaintiff should have observed and so have been alerted in time to have stopped his car and have avoided the accident. Zanetti Bus Lines, Inc., v. Hurd, 10 Cir., 320 F.2d 123; Merback v. Blanchard, 56 Wyo. 286, 109 P.2d 49; Ries v. Cheyenne Cab & Transfer Co., 53 Wyo. 104, 79 P.2d 468; Holstedt v. Neighbors, Wyo., 377 P.2d 181; Feltner v. Bishop, Wyo., 348 P.2d 548. Furthermore, appellant's statement that plaintiff "was blinded by" the Walker truck, its "spotlights being aimed straight at him" is gratuitous, not supported by evidence, and an unjustified inference or conclusion. The only testimony as to the direction in which the Walker spotlight was shining *at the time of plaintiff's collision* was that the spotlight was turned upward at an angle of from 45 to 60 degrees in a southerly direction.

Appellant suggests a conflict by attempting to distinguish the situation existing at the time of Auflick's collision from that later present by pointing to testimony that certain of the witnesses who subsequently arrived at the scene had been flagged down by use of a flashlight. But uncontradicted evidence shows that a flashlight was used in an attempt to flag down Auflick, and it also remains uncontradicted that Dickson and some others who later came upon the scene were not flagged down by any flashlight. So, here again appellant blows hot and cold, claiming at one point that there was insufficient lighting to give warning and at another that there was too much illumination.

■ We conclude the defendants complied with the laws of this State relating to the required lighting equipment on their trucks; that there was such illumination of the scene of which both defendants' trucks were a part to have warned the plaintiff of a present danger which he could have seen had he looked and could have averted colliding with the rear end of the Rocky Mountain truck if plaintiff was operating his car under control; and that the lighting and illumination from the truck of the defendant Walker did not so blind plaintiff as to relieve Auflick of contributory negligence.

Without conflict it appears the over-all blacktop of the road at the accident area was 23 feet 4 inches, divided with a double line which marked the north-bound lane as being 10 feet 6 inches, and the south-bound lane as 9 feet 10 inches wide; that the bridge was 19 feet in width, being narrower than the road, and 40 feet 5 inches long; that the extreme width of the Rocky Mountain truck was 8 feet 3 inches, and it had stopped 23 feet 10 inches south of the bridge with its right front wheel 10 inches from the soft shoulder of the road, its left front wheel 1 foot 3 inches from the center-line markings, its right rear wheels 7 inches from the edge of the road, and its left rear wheels 1 foot 8 inches from that line; that the shoulder becomes a part of the barrow pit and "just slopes off"; that the over-all weight of the Walker truck was 70,000 pounds, and that the Rocky Mountain truck had a "hell of a lot of weight on it," and "because of the mud tank [desander] * * * he [Dickson] was afraid he would lose it" had he pulled off the road very far.

■ From this evidence, coupled with that portraying the wrecked condition of the May vehicle and the concomitant circumstances indicating the probability of their being need to succor its occupants, it must be concluded as a matter of law that the drivers of defendants' trucks acted reasonably under stress of emergency conditions, and a jury would have erred to have found otherwise. Hines v. Sweeney, 28 Wyo. 57, 201 P. 165, 201 P. 1018; Henderson v. Land, 42 Wyo. 369, 295 P. 271; O'Mally v. Eagan, 43 Wyo. 233, 2 P.2d 1063, 77 A.L.R. 582; Wells v. McKenzie, 50 Wyo. 412, 62 P.2d 305; Jackson v. W. A. Norris, Inc., 54 Wyo. 403, 93 P.2d 498; Dallason v. Buckmeier, 74 Wyo. 125, 284 P.2d 386; Macy v. Billings, 74 Wyo. 404, 289 P.2d 422; McClanahan v. Woodward Construction Company, 77 Wyo. 362, 316 P.2d 337; Dr. Pepper Company v. Heiman, Wyo., 374 P.2d 206.

There was conflict in the evidence relative to the use of flares and reflectors as well as upon the asserted intoxication of Auflick, so we must conclude those questions in plaintiff's favor. Notwithstanding, the comments of the court made it clear that its direction of a verdict favorable to defendants was not predicated upon Auflick's intoxication, and, inasmuch as the court's action was based upon the contributory negligence of plaintiff rather than the negligence of either of the defendants, these conflicts in evidence are immaterial.

■ There was no error in refusing the plaintiff's offer in evidence of four photographic exhibits of the accident area which were taken long after the occurrence and which showed a changed condition of the scene. This is especially true as other admitted exhibits supplied pictures of the area.

■ Appellant's claim of error in the court's refusal to admit in evidence what was represented as plaintiff's statements made when he was in the hospital and while he was unconscious is entirely without merit; first, because plaintiff testified he had no recollection of the accident; second, because, if made, they were uttered so long after the occurrence as not to be any part of the res gestae; and third, because there was no offer of proof made as to their content and purport which would have enabled the court and counsel to determine whether they were of such a self-serving character as to be inadmissible.

Having concluded that: (1) viewing all the evidence in a light most favorable to plaintiff, a jury would have been in error had the evidence been submitted to it and decided contrary to our findings, Calkins v. Wyoming Coal Mining Co., 25 Wyo. 409, 171 P. 265; (2) the refused exhibits were properly excluded from the evidence; and (3) the statements represented to have been made by plaintiff long after the accident and while he was unconscious in the hospital were improper evidence, the judgment of the lower court upon its directed verdict is affirmed.

Affirmed.