CALKINS v. WYOMING COAL MINING CO., ET AL.

(No. 903; Decided March 18th, 1918; 171 Pac. 265.)

MASTER AND SERVANT—RECOVERY FOR INJURIES TO SERVANT—INJURIES OCCURRING OUTSIDE SCOPE OF SERVANT'S DUTIES—TRIAL—DIRECTED VERDICT—EVIDENCE.

1. Recovery cannot be had for the death of a servant where the direct and proximate cause of death was his own negligence involuntarily and outside the line and scope of his duties, going into a place of danger in disregard of his instructions at the time.

2. Where it clearly appears to the trial court that upon the evidence produced, giving to it its full probative force, together with all reasonable inferences deducible therefrom, it fails to establish in law a claim, or defense, it is not only the right, but the duty of the court to so instruct the jury.

ERROR to District Court, Sheridan County; HON. C. H. PARMELEE, Judge.

Action by Edward G. Calkins, administrator of the estate of Myron Chamberlain, deceased, against the Wyoming Coal Mining Company, a corporation, and the Sheridan County Electric Company, a corporation. There was a judgment for defendants on a directed verdict, and plaintiff brings error.

*Fred H. Free* and *Fred H. Blume,* for plaintiff in error.

The court erred in directing the verdict for defendants, as there was evidence as to the negligence of the Coal Company. It maintained a defective and dangerous installation of high tension wires and neglected to inform deceased of the danger. (Joyce on Electric Law (2nd Ed.), Vol. 2, pp. 1065, 1066.) An employee is in many cases relieved of a charge of contributory negligence where he acts under the immediate control of his superior. (Joyce on Electric Law, Vol. 2, p. 1071; Smith v. Electric Ry. & L. Co., 106 N. W. 829; Knowlton v. Des Moines &c. Co., 117 Ia. 451, 90 N. W. 818.) It is the duty of an employer to instruct unskilled servants as to new duties. (Thompson on Negligence, Vol. 4, pp. 313, 314; Galveston Ry. v. Hughes, et ux.,

22 Tex. Civ. App. 134, 54 S. W. 264.)  A question of con-
tributory negligence should not be taken from the jury un-
less the acts are so palpably negligent that there can be no
two opinions concerning them.  (Burian v. Seattle Electric
Co., 28 Wash. 806, 67 Pac. 214.)  Courts are not inclined to
construe too strictly the acts of an employee in the perform-
ance of the duties.  (Gremnis' Admr. v. Electric Light Co.,
20 Ky. 1293, 49 S. W. 184; Southern Ry. v. Stutts, 144
Fed. 948, 75 C. C. A. 588; Smith v. Milwaukee Electric
Co., 106 N. W. 829.)  The presumption is that decedent
was in the performance of his duties and used due care at
the time of his death.  (Staab v. R. M. B. T. Co., 129 Pac.
1078; Adams v. Bunkerhill &c. Co., 12 Idaho, 648, 89 Pac.
634, 11 L. R. A. N. S. 844, and cases there cited.)  The
test to be applied to men of the capacity and situation of
deceased is discussed in Mackay v. New York Central Ry.
Co., 35 N. Y. 75.  Instructions given in Giraudi v. Electric
Improvement Co., 107 Cal. 120, 40 Pac. 108, 48 A. S. R.
114, 28 L. R. A. 596, were approved, and were to the effect
that reasonable care must be adjudged by the circumstances
of the case and an employee ignorant of the danger that
might result from contact with wires is charged with a less
degree of care than would have been required if he had
been informed of the danger.

*Charles A. Kutcher* and *D. P. B. Marshall,* for defendants
in error.

No liability whatever is shown as to the Light Company.
The alleged negligence of the Coal Company was not estab-
lished by the evidence.  Insulation of electric wires is not
required at places where servants are not required or ex-
pected to go.  (9 R. C. L. 1213; Curtis on El. 510, 511.)
Decedent knew of the danger.  His work did not require
him to handle or go near the switch appliances.  The com-
pany could not have foreseen that he would commit such a
reckless act as to climb among such wires, or need instruc-
tion or warning with respect thereto.  The employer is not
required to warn a servant against acts so careless as to be

almost suicidal.  (26 Cyc. 1169;  Thompson on Negligence, Vol. 4, Sec. 4063.)   The testimony of witness Pollock was incompetent, it being a mere narration of a past transaction. (Mechem on Agency, Sec. 714.)    Where the evidence produced by the plaintiff shows no liability exists against the defendant, the defendant may avail himself of such proof and invoke the law arising upon the facts so proven.    (C. B. & Q. Ry. Co. v. Cook, 18 Wyo. 43.)    A servant encountering dangers which by the exercise of reasonable care could be avoided is guilty of contributory negligence. (Thompson on Negligence, Vol. 5, Sec. 5345.   See also Sec. 5437;  26 Cyc. 1088;  Bailey on Personal Injuries, Vol. 3, Sec. 749;  Sweezo v. Cheboygan Elec. L. & P. Co., 131 N. W. 125;  Hickok v. Auburn &c. Power Company, 93 N. E. 1113;  Mellon v. Mfg. Co., 150 Mass. 362, 23 N. E. 100.) That the accident might have been foreseen by defendant as the natural and probable result of its act or omission is of the very essence of negligence.   (Thompson on Negligence, Vol. 1, Sec. 28.)    The cross-examination of witness Pollock did not exceed the scope of proper cross-examination.   (48 Cyc. 2506;  Thompson on Trials, Sec. 435.)    The verdict was properly directed and should be confirmed.

*Fred H. Free* and *Fred H. Blume,* in reply.

A death trap was maintained by these defendants of which they had full knowledge.   Deceased was advised that there would be no current upon the high tension wires. Had he been a competent electrician, he would have been justified in believing that the superintendent knew whereof he was speaking and that the high tension wires would be harmless.   (Smith v. Milwaukee E. R. & L. Co., 106 N. W. 829;  Knowlton v. Des Moines &c. Co., 117 Iowa, 451, 90 N. W. 818.)   The evidence showed that after deceased had been informed that the current had been shut off, it was turned on again before the accident.   Deceased did not assume unusual or extraordinary risks.   (Zentner v. Oskash Gas Light Company, 105 N. W. 911.)   The testimony of Pollock did not refer to a past transaction.   (J. I. Case

Plow Works v. Pulsifer, 98 Pac. 787.) Pollock was general manager and Wertman head electrician. The admission of the superintendent to his immediate inferior was made with no knowledge of the death of Chamberlain. The statements were clearly admissible. (Bank v. Timmons, 84 S. E. 232; Snyder v. Frank, 101 N. E. 684.) The rule is stated in Henderson v. Coleman, 115 Pac. 439. The court usurped the functions of the jury. (Zentner v. Oskosh, supra.)

BEARD, JUSTICE.

The plaintiff in error brought an action against the defendants in error to recover damages for the death of Myron Chamberlain, alleged to have been caused by the negligence of defendants. At the close of plaintiff's evidence the court granted the motions of each of the defendants for a directed verdict. The court thereupon instructed the jury to return a verdict in favor of each of the defendants, which was done, and judgment was entered accordingly. Plaintiff brings error.

The defendant, Sheridan County Electric Company, was engaged in the business of generating, selling and distributing electricity for lights and power, and at the time of the accident complained of was furnishing electricity over its wires to defendant, The Wyoming Coal Mining Company, at a certain sub-station owned and operated by the Coal Company. At the time Chamberlain met with death he was, and for some time prior thereto had been, in the employ of the Coal Company as a laborer caring for said sub-station and the machinery and appliances therein, which machinery and appliances consisted of certain wires, insulators, transformers, converters, switches, etc. Plaintiff alleged in substance in his petition that said sub-station was defectively constructed and maintained in that the building was constructed of sheet iron and that the line wires entering the building and connecting with certain switches were placed not more than fourteen inches from a certain iron pipe in the building forming a "ground." That said wires

carried, when in operation, 23,000 volts of electricity and were not insulated. That said switches were about nine feet from the floor of the building and were operated with wooden sticks in turning on and off the current at the sub-station. That deceased was about fifty-six years of age, did not know of said defects and was ignorant of the dangers connected with handling said electric current and had not been warned of the danger by defendants. That on the day of the accident the Coal Company informed Chamberlain by telephone that the current was shut off from said sub-station. That relying on such information he placed a ladder against the wall and climbed up to one of said switches, which had become disarranged and out of repair, to repair the same, and his body coming in contact with said iron pipe and said switch he was instantly killed. That he did not know that the current was then on said wire.

The defendants, separately, answered denying any negligence on the part of either, and alleged that the death was caused by the negligence of said Chamberlain. Alleged that a short time before the death of Chamberlain he was directed by the general manager of the Coal Company to pull out the stick switches at the sub-station and to then immediately go to the mine and order the men to cease work for the night and come out of the mine. But for some reason unknown to defendants he procured a ladder from outside the building, and with knowledge of the danger, carelessly and negligently climbed up to said switch and wire. The Coal Company further pleaded assumption of risk by Chamberlain.

A careful consideration of all of the evidence, we think, fully establishes the following stated facts: That the substation and the machinery therein were constructed, installed and maintained substantially as alleged. That Chamberlain at the time of his death was, and for four or five months prior thereto had been, employed by the Coal Company as a laborer in said sub-station looking after and attending to the machinery therein. That he was about fifty-six years of age and a man of ordinary intelligence. That

he had been informed that there were 22,000 volts of electricity passing through the switches mentioned. That it is not practical to insulate wires carrying 22,000 volts of electricity. That the switches were operated by means of wooden poles about six feet in length, and that there was no danger in so operating them. That it was not a part of Chamberlain's duties to repair the switches, but was his duty if a fuse burned out of the end of a switch stick to remove the stick, put a fuse therein and replace the switch stick. That such repair was not attended with danger. That on the evening of the accident Chamberlain was directed by the general manager of the Coal Company by telephone "to pull the switches and notify the men to come out of the mine, that there would be no more power tonight, that there was trouble at the plant at Acme." Another witness states that the directions to Chamberlain were "to pull out the stick switches and go down in the mine and get the men out, that there wouldn't be any more power until Bibb and his men got out there at nine o'clock." That upon receiving such instructions Chamberlain pulled the switch sticks, but it does not appear that he then went into the mine and called the men out. He procured a ladder, placed it against the wall near one of the switches, climbed up to the iron pipe, which was about twelve feet from the floor of the building, and came in contact with the pipe and the switch or wire and was thereby killed. That the current was on the wires at that time, and the switches were not out of repair.

Upon the facts of the case as we understand them from the record, and as above briefly stated, there appears to us to be only one conclusion fairly to be arrived at, and that is that the direct and proximate cause of the death of Chamberlain was his own negligence in voluntarily and outside the line and scope of his duties going into a place of danger; and not only so, but in disregard of his instructions at the time. He was directed to pull the stick switches and then go into the mine and call the men out. He was informed, according to the testimony of one witness, that the trouble

was elsewhere—at Acme—and, according to another witness, to pull the stick switches and then go into the mine and call the men out and that the men from the Electric Company would be there at nine o'clock. Whether or not he went into the mine as directed, after he pulled the switches, does not appear from the evidence. If he did not he was clearly violating his instructions in doing what he did. And if he in fact went into the mine and called the men out, he must have returned and attempted to investigate or remedy a supposed defect which he had been informed would be attended to by men from the Electric Company. We think it clearly appears that had deceased kept within the scope of his employment and the discharge of his duties, and had not disregarded his instructions, the accident would not have happened. It is proper also to state that there is no allegation in the petition that it was the duty of Chamberlain to repair or attempt to repair the switches. When it clearly appears to the trial court that upon the evidence produced, giving to it its full probative force, together with all reasonable inferences deducible therefrom, it fails to establish in law a claim, or defense, it is not only the right but the duty of the court to so instruct the jury. So in this case, had it been submitted to the jury on the evidence contained in the record, and had the jury returned a verdict in favor of plaintiff and against either of the defendants, it would, in our opinion, have been the duty of the court to have set it aside. We discover no prejudicial error in the record and the judgment of the District court is affirmed.                          *Affirmed.*

POTTER, C. J., and BLYDENBURGH, J., concur.