230 P.2d 518

DUNGAN et al. v. BRANDENBERG et al.

No. 5190.

Supreme Court of Arizona.

April 30, 1951.

48

Rosenberg & LaVetter and Joseph B. Judge, all of Tucson, for appellants.

Darnell, Robertson & Holesapple, of Tucson, for appellees.

## PER CURIAM.

This case was brought by plaintiffs-appellants George and Margaret Dungan, husband and wife, against the Arizona Ice and Cold Storage Company, a corporation, and Philip Brandenberg, an iceman, hereinafter referred to as the "company" and the "driver" respectively. Plaintiffs alleged that the driver was the servant of the company, and that he, while in the scope of his employment, did negligently operate an ice truck and did thereby cause the death of plaintiffs' four-year old son, Jackie Dungan.

The facts as disclosed by the record show that on September 18, 1947, the driver made one of his regular deliveries of ice to the home of the plaintiffs. The driver parked the ice truck about thirty feet from the front of plaintiffs' house in the yard abutting it. Having made the

delivery he emerged from the house, entered the truck and commenced to back it up. The driver's testimony is conflicting as to just what observations he made relative to the whereabouts of the child before backing up the truck. When the truck had gone backwards about ten feet the driver heard his helper, one Fimbres who was then some distance away, holler, "Stop!" At the same instant he heard the child scream. The driver stopped the truck and retrieved the crushed body of the child which was lying in a prone position underneath the truck between the front and rear wheels. A short time thereafter the child died of his injuries.

The matter was tried before a jury. The trial court, at the close of plaintiffs' case, directed a verdict in favor of the company on the ground that plaintiffs had failed to show that the driver was a servant of said company at the time of the accident. At the close of the whole case, the trial court granted a motion for a directed verdict in favor of the driver on the ground that plaintiffs had failed to prove the negligence on the part of the driver in the death of the child. Plaintiffs' motion for a new trial was denied and they appeal from that order.

Plaintiffs' first assignment of error is that the trial court erred in directing a verdict in favor of the company. Plaintiffs contend initially that the company was the owner of the ice truck in question and then relies on the cases of Baker v. Maseeh, 20 Ariz. 201, 179 P. 53, 55, and Consolidated Motors, Inc., v. Ketcham, 49 Ariz. 295, 66 P.2d 246, which he asserts raise the presumption that the driver was the company's servant. The first cited case unequivocally holds that: " * * * proof of ownership is prima facie evidence that the driver of a vehicle causing damage by its negligent operation is the servant or agent of the owner and using the vehicle in the business of the owner." The latter case confirms the former. The evidence as to the ownership of the truck is in conflict. The record shows that the truck was registered with the Department of Motor Vehicles in the name of the company and that the truck license plates had been issued to it; the company was designated as the owner on the certificate of title. The driver testified that prior to the accident he had purchased the truck from the company, had given it a down payment thereon, and had executed a mortgage on the truck to the company for the balance of the purchase price. If the company were the owner, plaintiffs would be entitled to the presumption set out in the cited case. Because the evidence was in conflict and since the only evidence disputing ownership in the company was the testimony of the driver, an interested party, plaintiffs were entitled to have the jury consider

whether or not the company was the actual owner and thereby determine plaintiffs' right to the presumption.

It must be further noted at this point that the plaintiffs' case does not necessarily hinge on the ownership of the truck. Even though the company was the owner of the truck it does not necessarily follow that the driver was its servant, and conversely, it is entirely possible that the driver may have been the servant of the company at the time of the accident even though he himself, and not the company, was the owner. While it is true that in that event plaintiff would not have the benefit of the aforementioned presumption, still the question of master-servant relationship remains. Once again the evidence is in conflict. The driver's name and the company's telephone number appeared on the side of the truck. According to the contract between the driver and the company, the former could sell ice only in a territory defined and limited by the latter. The driver was under obligation to obtain all the ice that he sold from the company, and to charge whatever retail prices the company should fix. The driver was also obliged to make whatever deliveries the company should direct to the Prima County Hospital which paid the company and not the driver therefor. As opposed to this evidence the driver testified that he received no salary from the company, that they withdrew no withholding tax from his income, and that

he carried social security on his employee, Mr. Fimbres. He also testified that he received no instructions from the company (other than as set out above) as to the manner in which he operated the truck, and that he incurred all expenses in such operation.

There is no necessity of setting out the definitions of and differences between the relationships of master-servant and independent contractor. Those lines have been clearly drawn in this jurisdiction as will be found by a review of the cases. It suffices to say that the evidence is in sharp conflict and that it is such that reasonable men could differ in their determination of it. Whether the driver was a servant of the company or an independent contractor was a question that should properly have been left for the jury to determine. The trial court erred in directing a verdict for the company in this regard.

Plaintiffs' second assignment of error is that the trial court erred in granting a directed verdict in favor of the driver. Defendants' counsel cite in their brief the case of Williams v. Cohn, 201 Iowa 1121, 206 N.W. 823, 824, and quote therefrom to wit: "Three essential elements are involved in every case of actionable negligence: (1) The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) a failure by the defendant to perform that duty; (3) an

injury proximately resulting to the plaintiff from such failure * * *". That, succinctly stated, we take to be the law in this jurisdiction.

■ It is clear that the driver owed the deceased child a duty to protect him from being injured by the ice truck. The evidence discloses that the driver had been delivering ice to the plaintiffs for months; that he customarily parked his truck in the yard in front of plaintiffs' house near two wooden "horses" on which plaintiffs' children often played; that the driver was perfectly aware of the fact that little children were in the habit of playing in that area; and that he often gave small chunks of ice to the children playing about the yard. The driver admitted that immediately prior to taking the ice into the house, he saw the deceased child in the proximity of the parked truck. The evidence depicting the driver's duty need not be further delineated.

■ It is equally as clear that the child's death was proximately caused by the operation of the truck by the driver. The statement of counsel for the defendants in their brief, "* * * that any evidence as to whether the truck absolutely struck the child or not was at most sheer speculation," is utterly ridiculous. While backing up the truck the driver heard the child scream. Immediately thereafter the crushed body of the child was found lying in a prone position underneath the truck between its front and rear wheels. We do not think it conceivable that the child's death was caused by any means other than being run over by the truck.

It remains to be considered whether there was sufficient evidence that the driver breached his duty to the child. The test is whether the driver acted as a reasonable man would have acted in like or similar circumstances. There is some conflict as to what the driver did after returning from the house to the truck, and the care he exercised before backing up the truck. The driver testified: "Q Just what did you do to determine whether there was anyone there or not? A When I came out of the house the truck was in position No. 2 on the diagram; come out on the northeast corner; glanced to the rear of the truck when I went around my truck, south side on the diagram. I walked to the rear." And further: "Q Did you attempt to determine through that mirror whether any person or persons were near your car before you started it? A No, I looked to the rear." And further: "Q Now, you said here a moment ago, and if I am in error you can tell me, that you went behind the truck to see if anybody was behind it? A I walked to the end of the truck, sir." Referring to a deposition of the driver taken before the trial: "Q 'Question: And you say that you went

52

behind the truck before you got in and drove back?' And your answer was, 'No, I looked back on both sides. I didn't look inside the truck.' Did you make that answer to that question? A Yes, sir." From his own testimony it does not clearly appear exactly what the driver did on returning to the truck after delivering the ice. At the trial he said he walked to the back of the truck and in the deposition he said that he merely looked back on both sides of the truck.

In Collins v. Riverside Amusement Co., 61 Ariz. 135, 145 P.2d 853, 857, this court said: " '* * * We have often decided that a verdict will not be directed in a case where the evidence is conflicting or where on all the facts and circumstances proven there is room for fair and sensible men to differ in their conclusions. * * *' "

In reversing a verdict directed in favor of defendant in Keeler v. Maricopa Tractor Co., 59 Ariz. 94, 123 P.2d 166, 167, this court said: "The assignments of error present, in substance, but one question, and that is whether there was sufficient evidence introduced in the case to take it to the jury. In considering this question, we must, of course, take the evidence as strongly as is reasonably possible in favor of plaintiff, for it is only if there is no evidence that would justify a jury in finding the issues in his favor that the court is authorized to instruct a verdict against him. * * *"

And in Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201, 204, this court points out: "Ordinarily an appellate court in determining an appeal views the evidence, where it is conflicting, in the light most favorable to a sustaining of the lower court's judgment. (Citing cases.) A reverse rule however applies where, as here the trial court directs the jury to return a verdict for the defendants. The conflicting evidence then must be viewed in a light most favorable to plaintiff. (Citing cases.)"

In reviewing the evidence in this case, employing the interpretation as set out in the cases cited above, we hold that the question should have been submitted to the jury to determine whether or not the driver was negligent in operating the ice truck. The trial court therefore erred in directing a verdict in favor of the defendant driver.

Since the above discussion effects a complete disposition of this case on appeal, plaintiffs' other assignments of error will not be considered.

The case is reversed and remanded for a new trial not inconsistent with this opinion.

Reversed and remanded.

Justice A. T. LA PRADE, being disqualified, the Honorable Benjamin BLAKE, Judge of the Superior Court of Graham County, was called to sit in his stead.