Britt C. **FELTNER**, by Kurt C. Feltner, his
next friend, Appellant (Plaintiff below),

v.

Jack Keith **BISHOP**, Appellee
(Defendant below).

No. 2899.

Supreme Court of Wyoming.

Jan. 26, 1960.

Albert E. Nelson and William H. Jackson, Jr., Rock Springs, for appellant.

A. Joseph Williams and Glenn A. Williams, Cheyenne, for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

The plaintiff, by his father as his next friend, sued defendant to recover damages for injuries sustained in an automobile accident. The case was tried to the court and judgment rendered in favor of defendant. Plaintiff appeals.

The evidence in the case is undisputed, but appellant contends (a) it only admits of inference favorable to the plaintiff and, therefore, the negligence relied upon is a question of law and not of fact; (b) the proximate cause of plaintiff's injury was defendant's violation of statutory duty; (c) plaintiff, because of young age, was not chargeable with contributory negligence; and (d) negligence of the child's parents could not be imputed to the child so as to bar recovery.

It appears from the evidence that as defendant was driving his automobile at a speed of between 10 and 20 miles an hour, approaching the intersection of two streets, the plaintiff darted from behind an automobile which was diagonally parked to the right of defendant as he was approaching the intersection. At a point somewhat in excess of 6 feet toward defendant's approaching car from the nearest point of the pedestrian-crossing area, as indicated by prolongation of sidewalk lines across the street, the front center of defendant's car struck the child and knocked or carried him to the closest line of the unmarked crosswalk area. The car passed over the child without, however, any of the wheels running over him. The defendant did not see the child but heard a noise which caused him to immediately look backward and discover the child lying on the street. The car was stopped in the center of the street intersection and then was driven across the street, the defendant returning to where the child was lying. Witnesses said they saw the child running from the sidewalk, alongside and close to the diagonally parked car and in front of defendant's approaching car, where he was struck. A local officer testified that he found some skin and blood stains on the street at a point 26 feet from the right-hand curb and 6 feet from the closest prolonged line of the pedestrian-crossing area, measured toward the direction from which the car came. Other evidence showed that immediately before the impact the child was seen to throw his arms in front of him. From this meager evidence the appellant now claims there could be but the single inference that at the time of the accident the defendant was operating his car in a careless and negligent manner and contrary to the law of this State.

In an effort to bolster their thesis that but a single inference can be drawn from the evidence, counsel evidently sense that it would be necessary to destroy the force of the testimony that the child darted from the curb and ran in front of defendant's car. To do this, both in oral argument as well as in brief, it was stressed that when one eyewitness first stated the child "ran in front of the car", "But, anyway he was in the middle of the car and he saw he was going to be hit and he threw his hands up like this", "All I saw was him dart from the curb in front of the car, is all I saw", "It seemed like he did stop because he threw both hands up in front of him", and then on cross-examination she testified she could not remember if the child was running or walking when she *first* saw him and could not say if he *always* was running or *always* was walking, her evidence was discredited or at least was contradictory. Evidently the trial court did not agree and we ourselves fail to see inconsistency in the testimony. There is no conflict in saying a child was darting and running in front of a car, stopping and throwing up his hands in front of him just before the impact, and not remembering if the child was walking or running when the witness first saw him or was unwilling to say if he was always running or always walking.

We are fully aware of the soundness of the general rule that the operator of an automobile cannot assume that the road is clear and that under all circum-

stances and at all times an operator is bound to anticipate that persons may be met at any point in a public way, whether street, road or highway. We also feel this duty becomes more strict when the presence of persons upon streets or highways actually exists or becomes more probable. On the other hand, the limit of the operator's duty when lawfully driving is to exercise a diligence commensurate with hazards disclosed under surrounding circumstances, and the lookout which operators of vehicles must maintain is that most effective in the light of all present conditions and those reasonably to be anticipated. See 1 Blashfield, Cyclopedia of Automobile Law and Practice, Part 2, Perm. ed., § 681, pp. 563–565.

We also recognize that the existing circumstances surrounding an accident bear largely upon the question of an automobile operator's negligence, and this is particularly important in cases involving the sudden and erratic movements of children. So it is that a vehicle driver must be aware that children may be heedless of their safety. This is especially the case in areas where children are most likely to be found, as in the vicinity of schools and playgrounds. In such places the driver must constantly exercise the greatest degree of care which is humanly possible even to anticipating that a child may unexpectedly dart in front of the vehicle he is driving. Yet, under ordinary traffic conditions and places, even at intersections in towns and cities, the rule is somewhat different. There, the presence of an unattended child of 3½ years, who suddenly darts across the street from behind a diagonally parked car, is to say the least a somewhat unusual and not ordinarily to be expected occurrence. Under such a circumstance, it is understandable that the court felt defendant should not be held to be guilty of negligence.

Nor can it be said that the failure of the defendant to see the child before the accident indicated he did not maintain a proper lookout or was not as alert as he should have been. Even where a high degree of care and caution is required, the law does not demand the type of foresight or vision that would have insured at all events the defendant's seeing the child under the conditions depicted by the evidence in this trial.

In the late Missouri case of De Lay v. Ward, Mo.App., 262 S.W.2d 626, reversed 364 Mo. 431, 262 S.W.2d 628, 634, 635, Id., Mo.App., 275 S.W.2d 396, a not altogether dissimilar case to the one before us, the supreme court explained that the question presented was "whether in the exercise of the highest degree of care the defendant could and should have seen her [the child] in a position of imminent peril", and the court said that "a defendant is charged with seeing what he could have seen whether he looked or *negligently* failed to look". (Emphasis supplied.) It is not important that in the De Lay case the supreme court agreed with the jury's verdict finding that had the defendant been sufficiently alert the accident might have been avoided. The importance of the case is that it recognized that the criterion was whether or not the defendant not only could have seen, but should have seen, the child in time to avoid the accident. In the case before us, the conclusion of the trial court that the defendant was not chargeable with negligence indicates it found that because of existing circumstances defendant's failure to see the child was not due to his failure to look. The defendant, although exercising due care and caution, might understandingly have missed seeing the plaintiff.

We find it stated in 2A Blashfield, Cyclopedia of Automobile Law and Practice, Perm. ed., § 1498, pp. 406–409, that:

"Drivers or owners of motor vehicles are not insurers against all accidents wherein children are injured. Accordingly, a driver proceeding along a street or highway in a lawful manner using ordinary and reasonable caution for the safety of others, including children, will not be held liable for striking a child whose presence in the street

could not reasonably be foreseen. He is not required to anticipate the appearance of children in his pathway, under ordinary circumstances, from behind parked automobiles or other obstructions.

"Thus, when a motor vehicle is proceeding upon a street at a lawful speed, and is obeying all the requirements of the law of the road and all the regulations for the operation of such machine, the driver is not generally liable for injuries received by a child who darts in front of the machine so suddenly that its driver cannot stop or otherwise avoid injuring him."

An exhibit in evidence has marked upon it a diagram of the intersection with the width of the street, the widths of a prolongation of the sidewalks at the intersection, the place where the body of the child lay after the accident, the diagonally parked car from the side of which the child darted and ran in front of the oncoming accident car, and the position of the car in which the child's parent was waiting for him across the street. Other evidence shows skin and blood were found some 6 feet from the prolonged line of the sidewalk which was closest to the approaching car. A direct line from the rear of the diagonally parked car to the automobile in which the child's father was waiting, in conjunction with the skin and blood marks, would indicate that the place of impact was somewhat farther than 6 feet from the crosswalk area because the skin and blood would be found where the child's body struck the pavement rather than where it was struck by the car. This rather graphically illustrates that a young boy of the age of 3½ years must have been so nearly concealed from the view of the car operator by the diagonally parked car, along the side of which he was running, that even though the operator had been looking in that direction, it is at least doubtful the child would have been seen. It seems obvious that the skin and blood found on the street after the accident did not indicate the place where the impact occurred. Just how far the boy was knocked or pushed before he struck the pavement where the skin and blood were found can, of course, only be a matter for speculation, but every inch of further distance toward the approaching car that the accident occurred makes it less and less likely that the child could have been seen by the driver until that bare instant when he passed beyond the obstruction of the diagonally parked car and was struck. But, aside from this, a careful, conscientious driver, approaching such an intersection at a speed which under the evidence may have been as slow as 10 miles an hour, was not required to look continuously at the one place from which the child came. A cautious operator would have looked both to his right, to his left and straight ahead to ascertain if he might safely proceed.

The district court was in the best position to judge whether the defendant was lacking in such diligence in the split second which elapsed between the running child's clearing the diagonally parked car and his being struck down by the defendant's car. We must, therefore, overrule appellant's contention that the only inference that could be drawn from the evidence made defendant liable as a matter of law.

■ Appellant's further claim is that defendant violated his statutory duty because of the provisions of § 60–520, W.C.S. 1945, as amended. This statute provided:

"(a) Where traffic control signals are not in place or in operation the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection, except as otherwise provided in this Act [§§ 60–301—60–710]."

However, there were no amendments to this statute and appellant failed to advise us that § 60–520, W.C.S.1945, was repealed by Ch. 225, § 163, S.L. of Wyoming, 1955. Appellant failed to inform us that the laws applicable on June 6, 1956, the date of the

accident, were Ch. 225, § 68, S.L. of Wyoming, 1955, now appearing as § 60–668 in the 1957 Cumulative Pocket Supplement to Vol. 4, W.C.S.1945, also as § 31–158, W.S. 1957; and Ch. 225, § 69, S.L. of Wyoming, 1955, now appearing as § 60–669 in the 1957 Cumulative Pocket Supplement to Vol. 4, W.C.S.1945, also as § 31–159, W.S.1957; and Ch. 225, § 70, S.L. of Wyoming, 1955, now appearing as § 60–670 in the 1957 Cumulative Pocket Supplement to Vol. 4, W.C.S.1945, also as § 31–163, W.S.1957. We also express some surprise that the appellee did not call our attention to the error in appellant's reference.

Section 31–158, W.S.1957, provides:

"(a) When traffic-control signals are not in place or not in operation the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a cross walk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger.

"(b) No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield.

"(c) Paragraph (a) shall not apply under the conditions stated in section 69(b) [§ 31–159(b)].

"(d) Whenever any vehicle is stopped at a marked cross walk or at any unmarked cross walk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle. (Laws 1955, ch. 225, § 68.)"

Section 31–159, W.S.1957, provides:

"(a) Every pedestrian crossing a roadway at any point other than within a marked cross walk or within an unmarked cross walk at an intersection shall yield the right-of-way to all vehicles upon the roadway.

"(b) Any pedestrian crossing a roadway at a point where a pedestrian tunnel or overhead pedestrian crossing has been provided shall yield the right-of-way to all vehicles upon the roadway.

"(c) Between adjacent intersections at which traffic-control signals are in operation pedestrians shall not cross at any place except in a marked cross walk. (Laws 1955, ch. 225, § 69.)"

Section 31–163, W.S.1957, provides:

"Notwithstanding the foregoing provisions of this act every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway. (Laws 1955, ch. 225, § 70.)"

Under the laws applicable in the case of this accident, it clearly appears that the child was in the wrong when he suddenly left the curb to run into the path of defendant's approaching vehicle and in failing to yield the right-of-way to defendant's automobile even though the boy may not legally be guilty of contributory negligence. True, § 31–163, W.S.1957, required the defendant to exercise due care to avoid colliding with the child, and had he seen the child he should have given warning by sounding his horn and should have done everything possible to avoid striking the child. But the law never requires an individual to do that which is impossible, and the trial court was obviously convinced from the evidence, as we are, that the defendant was given no opportunity to see the child at all, and consequently was not required to give warning of a danger which was unknown to him. While the height of the child is not given in evidence, a reasonable inference as to his height might properly have been drawn by the court from his age. Although some children are overly tall for their age, as some are under usual

height, it is not hard to conceive that a child of 3½ years was more completely concealed by the diagonally parked car than an adult would be.

Appellant cites as a leading case Kisling v. Thierman, 214 Iowa 911, 243 N.W. 552, 554, where definition of legal excuse for not complying with statutes or ordinances is said to be:

"1. Anything that would make it impossible to comply with the statute or ordinance.

"2. Anything over which the driver has no control which places his car in a position contrary to the provisions of the statute or ordinance.

"3. Where the driver of the car is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute.

"4. Where a statute specifically provides an excuse or exception."

Appellant also cites as another leading case Satterlee v. Orange Glenn School Dist. of San Diego County, Cal.App., 160 P.2d 919, reversed, 29 Cal.2d 581, 177 P.2d 279, 283, where the court said:

" * * * the fact which will excuse the violation of a statute has been de-fined by the court as one resulting 'from causes or things beyond the control of the person charged with the violation.' * * *"

We fail to see how counsel can reconcile these holdings with the contention which they make that there was an inexcusable violation of the statute, whether it be the statute upon which they mistakenly rely or the laws which were in fact in force at the time of the accident. In the face of the statutes in force at the time of the accident and the evidence before the court, appellant's contention that the proximate cause of the accident was defendant's violation of his statutory duty must be overruled.

We find it unnecessary to discuss appellant's contentions respecting contributory negligence on the part of either the child or his parents, as this would only be necessary had we agreed that defendant was negligent.

In conclusion we find that there was ample evidence to justify the court's finding that the defendant was not negligent and that as a matter of law the defendant did not violate the provisions of the applicable statutes of this State.

Affirmed.