**Richard Parker v. John G. Gunther et al**

[164 A.2d 152]

May Term, 1960

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed September 6, 1960

*Ryan, Smith & Carbine* and *George W. F. Cook* for the plaintiff.

*Edwin W. Lawrence* and *Donald M. French* for the defendants.

**Smith, J.** This is an action of tort to recover damages on account of personal injuries sustained by the infant plaintiff, Richard Parker, as a result of his being involved in a motor vehicle accident with a tractor-trailer truck. The tractor-trailer truck was driven by the defendant Walter King while King was engaged in the duties of his employment for defendant John Gunther. A jury trial of the case in the Rutland County Court resulted in a verdict and judgment for the plaintiff against both defendants. The case is brought here by notice of appeal duly filed by the defendants.

The defendants, at the close of the evidence for the plaintiff, and again at the close of all the evidence in the case, moved the court to direct a verdict in their favor on two grounds. The first ground for the motion was that there was no evidence of failure on the part of the defendants to perform any legal duty, and that there was no evidence of negligence on the part of the defendants which acted as a proximate cause of the accident. The other ground advanced on the motion for a directed verdct in favor of the defendants was that there was evidence of negligence as a matter of law on the part of the plaintiff, and that such negligence served as a proximate cause of the accident.

In considering the denial by the lower court of defendant's motion we must take the evidence in the light most favorable to the plaintiff. *Callahan* v. *Disorda,* 111 Vt. 331, 337, 16 A.2d 179.

On Jan. 29, 1953, the defendant, Walter King, was driving the tractor-trailer truck of the defendant, John G. Gunther. He was on a return trip from Boston, Mass., and, as he came into West Rutland, he stopped at Sevigny's Drug Store. The route which he was following was Route 4, which runs in an easterly-westerly direction through West Rutland. He had travelled this route through West Rutland hundreds of times before, and was familiar with the fact that a school zone, so marked, existed a short distance ahead on his westerly journey from the drug store.

Leaving the store he resumed his journey westward, entering the school zone area at about ten minutes of nine in the morning. His

tractor-trailer truck was travelling at a speed of 15 to 18 mph. in the school zone, and he proceeded straight ahead on the extreme right, or northerly side of Route 4. There was no other traffic on Route 4 in that vicinity at that time.

At about this same time on the morning of January 29, 1953, the plaintiff, then a child of between six and seven years of age was on his way to school in the company of an older brother and sister. The children were walking westward on the north side of Route 4 on the sidewalk on that side of the street. This sidewalk, upon which the children were walking, is only three feet from the paved edge of Route 4. There is no curbing between walk and highway in that vicinity, merely a three foot strip of dirt or gravel between the walk and the highway.

The plaintiff was going on his way to school in a manner of progress peculiar to the very young. He was attempting to walk on the southerly edge of the sidewalk, which was the part of the walk nearest the road, by placing one foot directly in front of the other, a mode of travel described by a youthful witness as "catwalking." Witnesses of more adult years described the plaintiff's progress as "cantering backways and sideways," "dogtrotting," "cavorting" and "dancing along the edge of the sidewalk."

The defendant King saw the plaintiff so playing when about two hundred feet ahead of him. He did not look that way again but kept his eyes only on the road ahead. The defendant continued on his same course at the edge of the road, at the same speed, and without a signal of any nature, until he was informed by a bystander that the boy had been hit by his truck at which time he stopped. It was only after the accident that he saw the plaintiff for a second time.

The accident actually happened when the plaintiff backed, fell or otherwise moved from his "catwalking" at the edge of the sidewalk, in such manner as to come into contact with the right rear wheel of the tractor-trailer, and was thrown to the ground between the edge of the sidewalk and the road.

It is the contention of the defendants that there was nothing that the driver, King, could have done to avoid the accident; that he was where he had a lawful right and duty to be on his own right hand side of the road, that his speed was lawful and reasonable under the cir-

cumstances, and that the accident was caused solely by the contributory negligence of the infant plaintiff.

In the Maryland case of *Ottenheimer* v. *Molohan,* 146 Md. 175, 126 A. 97, the Court of Appeals of that state was confronted with a similar situation. The defendant in that case was travelling at a speed of 18 mph. on his own right hand side of the road. A boy of six and a half years of age was playing alongside the road some six or seven feet from the highway where he was observed by the defendant. The road was free from other traffic. As the defendant's automobile came opposite the boy the youth jumped in front of it and was injured. On the matter of the defendant being free from negligence as a matter of law the Maryland court stated:

> "It cannot be said as a matter of law that defendant was free from negligence in passing on the very edge of the road at a rapid rate of speed, small children playing at the roadside, when there was nothing to prevent him from turning to the middle or farther side of the road. The well known habit of children when playing to become oblivious to dangers of this character, should have been a warning to the defendant to slow down and turn as far away as practicable under the circumstances. The signs on every public road warning automobilists to 'go slow' recognize this characteristic of children."

This Court, in the case of *Callahan* v. *Disorda, supra,* where the evidence disclosed that a three-year-old child was injured when the defendant backed her car into the child who suddenly dashed out behind her, said:

> "Taking the evidence in the light most favorable for the plaintiff, as it must be taken, the jury would have been justified in finding that the defendant knew or ought to have known that the child was in the immediate neighborhood. She was charged with the common knowledge that very young children are erratic and likely to move quickly and without regard for their own safety."

In the case at hand the accident happened within a school zone, which was so marked, and with which the defendant was familiar, and at a time when children were on their way to school. A motorist driving his vehicle near a schoolhouse or through a school zone is under duty to exercise a high or greater degree of caution, particularly

at the hour when children may be expected to be going to, or returning from school, keeping his car under such control that it can be stopped on as short as possible notice. He must anticipate childish conduct and drive with the knowledge that children of tender years may be expected to act upon childish impulses. He should drive at a reduced rate of speed, maintaining a vigilant lookout, and being alert to sound warnings of his approach. 5A. Am. Jur. Automobiles and Highway Traffic, p. 509.

In the circumstances of this case, taking into consideration that the accident happened within a school zone, the constant speed of the defendant's vehicle, the route of the vehicle at the edge of the road, the absence of traffic in the vicinity, the non-use of any warning device by the driver, coupled with the evidence that the defendant King saw the child playing within a few feet of the highway prior to the accident, but failed to observe him again until after the accident made the negligence of the defendants a question of fact for the jury. It was for the jury to say whether, under the circumstances then existing, the defendant King acted as a prudent man.

On the question of whether the lower court should have charged, as a matter of law, that the plaintiff was contributorily negligent in such manner as to form part of the proximate cause of this accident, both parties have cited the case of *Johnson's Admr.* v. *Rutland R. R. Co.,* 93 Vt. 132, 106 A. 682.

The Johnson case was brought as the result of the death of a child by a train at a railroad crossing. The age of the child was 6 years and 9 months, almost identical with the age of the infant plaintiff in the case now before us. This Court, after refusing to adopt the rule of some jurisdictions that all children under seven years of age are incapable of any care or discretion, in the quotation that follows set forth the doctrine of this state on the contributory negligence of children:

"A more satisfactory doctrine, and one in harmony with our former decisions, is that a child may be of such tender years that he should be conclusively presumed incapable of judgment and discretion. On the other hand he may be so mature in age and intelligence that the court should say as a matter of law that he is capable of exercising some degree of care for his own safety under circumstances like those in question; in which case, under the rule

that prevails with us, if there is no evidence that any care was exercised, the question of contributory negligence is one of law and not of fact. Lying between these limits, necessarily undefined as to age, are the cases where the capacity to encounter and avoid a given danger cannot be ruled as a matter of law, either that the child has or does not have any capacity for caution, or was capable of exercising care for his safety in the circumstances."

The Court then went on to say:

"The controlling question here is, then, whether it should be held on the evidence as a matter of law that the decedent had sufficient capacity to grasp understandingly the nature and extent of the danger which she encountered. We think it should not be so held, and that the case was for the jury on that question under proper instructions."

The evidence in the present case is that the plaintiff was a first grade student, described as "average" by his school supervisor in intelligence, and "like any other kid" by his father. No evidence appears in the case that he was aware of the approach of the defendant's tractor-trailer, nor is the evidence that he was trying to cross the road when he was struck.

The circumstances of danger which the plaintiff encountered in his play on the edge of the sidewalk were the very short width of the strip of land between the walk and the highway, and the approach of the defendant's vehicle, from his rear, in immediate proximity to the edge of this strip of land. Having in mind the age of the boy, his average intelligence, and the unusual aspects of the danger that he encountered, we believe that, just as in the Johnson case, the question of his capacity to understand the nature and extent of the danger which he might encounter while he was thus playing was one of fact for the jury. No error is found in the denial of the motion for a directed verdict by the court below.

The defendants have briefed their exception to the lower court's refusal to charge in compliance with their request to charge, No. 6, which states: "The evidence discloses that the place where the plaintiff came out on the highway was not a place for pedestrians to cross. Whereas, at regular crossings where pedestrians usually cross, the

driver of a motor vehicle is required to be more vigilant in keeping a lookout for foot travellers, at points between crossings, such as in this case, the vigilance of the driver may be more relaxed and the vigilance and watchfulness required of the foot travellers is correspondingly increased." The defendants cite *Howley* v. *Kantor,* 105 Vt. 128, 131, 163 A. 628, as authority for this request to charge.

*Howley* v. *Kantor, supra,* was an action brought by a pedestrian who was struck by a motor vehicle while crossing a street in the business section of the city of Rutland "between crossings." As we have before noted there is no evidence in the case before us now that this plaintiff was attempting to cross the street at the time he was injured. The citation from the Howley case in the defendants' request was made by this Court relative to the degree of vigilance that a pedestrian must use for his own safety in crossing a street between points which are duly set out for such crossing by foot travellers, rather than the setting forth of a rule for the conduct of motor vehicle operators between such regularly constituted cross-walks as the defendants would claim. The request was properly refused.

The final exception briefed by the defendants is to the admission of the testimony of Dr. Smolinski, a general practitioner of medicine in the town of West Rutland, on brain damage suffered by the plaintiff as a result of the accident. The defendants' objection is that Dr. Smolinski, by reason of the fact that he is admittedly not a specialist in injuries or diseases of the brain, was not qualified to testify on that subject.

The defendants cite no law, nor do they refer us to any specific part of the record, in support of their contention. The question of the competency of the witness was a preliminary matter for the court to decide. We are concluded by the ruling of the trial judge on the point unless it is made to appear from the evidence that his decision was clearly wrong. The defendants do not refer us to any part of the record to indicate that the court's treatment of the matter was erroneous. *Fournier* v. *Burby,* 121 Vt. 88, 93, 148 A.2d 362. No error appears.

*Judgment affirmed.*