**Robert E. HOLSTEDT, Administrator of the Estate of Pamela Jean Cole, Appellant (Plaintiff below),**

v.

**Harriet Churchill NEIGHBORS, Appellee (Defendant below).**

No. 3082.

Supreme Court of Wyoming.

Dec. 19, 1962.

Robert E. Holstedt and Holstedt & Schwartz, Sheridan, for appellant.

Lawrence A. Yonkee and Redle & Redle, Sheridan, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

This is a wrongful death case in which a directed verdict was granted by the trial court because it considered the evidence insufficient to submit to the jury.

Action was brought by Robert E. Holstedt as administrator of the estate of Pamela Jean Cole who was killed when struck by an automobile operated by Harriet Churchill Neighbors, defendant. The child was three and one-half years old. At the time of the accident Mrs. Neighbors was backing an automobile inside a motel courtyard. During the backing her vehicle struck the child who was a guest at the motel, and the child died the same day from injuries received.

Pamela was struck by the back end of Mrs. Neighbors' car, "towards the left part of her car." According to Mrs. Neighbors, she had spent much time around the motel during 18 years and children played in the motel courtyard from time to time.

Our only question on appeal is whether any substantial evidence of negligence on the part of defendant was offered by plaintiff. The principal point in dispute is whether Mrs. Neighbors used due care by looking before she backed and by keeping a proper lookout as she backed. We therefore confine ourselves to evidence which tends to show whether she in fact looked and saw what there was for her to see.

It goes without saying that, in passing upon a motion for a directed verdict, the evidence must be taken in the light most favorable to plaintiff, and we must accept the whole body of evidence in the strongest way it reasonably can be interpreted in support of plaintiff's claim. Cheney v. Wheeler, 122 Vt. 295, 170 A.2d 642, 643; Parker v. Gunther, 122 Vt. 68, 164 A.2d 152, 153;

Geiger v. Schneyer, 398 Pa. 69, 157 A.2d 56, 57; 2B Barron & Holtzoff, Federal Practice and Procedure, § 1075, p. 378 (1961).

Mrs. Marie Cole and her three children were staying in a cabin at the motel. The youngest child was Pamela. The oldest was Diane, eight years of age, and the third child was Tommy, six years of age. All three children went outside their cabin and walked around in front of the cabin with Diane and Tommy holding Pamela by her hands. Pamela got some mud on her shoes.

Their mother relates she saw her children in front of a nearby open cabin door and that Pamela was constantly by Diane and Tommy. Diane explained Pamela said she wanted to clean off her shoes, so Diane let go of Pamela who then went over to the place where she was struck, and Diane explained that Pamela was going to get a stick to clean off her shoes. Diane said that after she let go of Pamela, "just a few seconds later, I heard her scream – – just a couple of seconds." When Diane heard Pamela scream she turned around and saw Pamela half under Mrs. Neighbors' car. On cross-examination Diane was asked if it were not true that Pamela had gone beyond Mrs. Neighbors' car and toward the left part of it before she was struck, to which Diane answered "she hadn't had time to go any farther than that."

In this connection, the child's mother testified that the accident happened immediately after she saw the three children together in a safe place alongside the building and next to their cabin, and she emphasized the shortness of the time interval by saying she had just turned from the window to sit on the bed and that "I just hit that bed when I heard this screech."

Mrs. Neighbors, called as an adverse witness, related she was about to use her son's car which was parked in the courtyard and behind an adjacent service station; that it was necessary to move her father's car which was parked behind her son's car; that she first placed two sacks of groceries in her son's car and then got into her fa-

ther's car; that she noticed "two children" playing in front of a cabin numbered six; that she backed her father's car to the north, and faced it by going forward in a westerly direction, which would be toward the motel; that the children then, "were right there in front of me"; that she then got into her son's car and looked around because she knew "two" children were over in front of cabin six and she looked to the sides "and they were still there" in front of cabin six; and the witness stated "and then I swing around and looked out the back, as I always do as I'm backing."

An examination of pictures and a diagram in evidence reveals cabin six was to the northwest and at a diagonal angle of approximately 45° to the right and rear from where Mrs. Neighbors placed the original location of the accident vehicle. It therefore seems fair to say the children would have been visible to Mrs. Neighbors as she looked over her right shoulder, especially as she testified she was looking over her right shoulder all the time when she was backing. Mrs. Neighbors further testified that as she was backing she heard a scream; that she stopped the car, got out and rushed to the back of the car; and that when she got around to the back of the car, "the two children that had been playing in front of Cabin 6" were there, "and the little girl—there was a little girl there that they were helping up off the ground."

From the diagram and pictures introduced in evidence, and according to her testimony, it appears that the left rear portion of Mrs. Neighbors' car came to rest approximately 75 feet east and 50 feet south of the point at which Pamela had left her sister. Mathematically, this made the shortest intervening distance about 90 feet. It also appears from her testimony and from the diagram and pictures in evidence that Mrs. Neighbors backed the accident vehicle 15 to 20 feet.

In Price's Estate v. Rosen, 50 Luz.Leg. Reg. (Pa.) 247, 251, it was held that running down a child on an unobstructed highway in broad daylight is evidence of negligence unless the child suddenly darted in front of

the car. If Pamela traveled by foot from where she left her sister and brother, a distance of not less than 90 feet across an open courtyard, while Mrs. Neighbors backed only 15 to 20 feet, the possibility that the child darted suddenly and unexpectedly behind the car is eliminated.

The mere fact, standing alone, that the vehicle hit the child inside an open courtyard without the driver realizing the child was present in the courtyard is sufficient to question the driver's insistence that she was looking to the rear and right rear as she backed. Such a question presented an issue of fact to be determined by a jury. As stated in Grayson v. Yarbrough, 103 Ga. App. 243, 119 S.E.2d 41, 44, direct testimony may be disproved by circumstances inconsistent with it.

Significantly, in the Yarbrough case defendant-Grayson contended, much as Mrs. Neighbors contends in the case at bar, that defendant was not negligent because no witness contradicted his testimony. The court said the contention was not meritorious because if the story of the relatives were believed by the jury, the defendant could have seen the child before he ran into him. Likewise, if the jury in this case believed Mrs. Cole and Diane, then Mrs. Neighbors could have seen the child before she ran into her, had she looked.

The testimony of the child's mother and sister, coupled with the physical conditions portrayed, tends to contradict the driver's statement that she looked and saw only two children in the courtyard or that there were only two children to be seen, had she in fact looked, during the time she moved her father's car and then backed the accident car.

Hildreth v. Key, Mo.App., 341 S.W.2d 601, 605–606, has to do with the death of a six-year-old child and the duty of a motorist who had a clear and unobstructed view of the walkway on which the child was playing. A number of authorities are cited in that case for the statement that where one is charged with the duty to look and to look is to see, he must be held to have seen what looking would have revealed. Thus, the opinion states, although defendant-Key said he had looked, his failure to see what was plainly visible constituted negligence, as much so as if he had not looked at all.

As set out in 1 (Part 2) Blashfield, Cyclopedia of Automobile Law and Practice, § 681, p. 209 (Perm.Ed., 1960 Cumulative Pocket Part), and approved by us in McDowall v. Walters, Wyo., 360 P.2d 165, 169, 361 P.2d 528:

> "It has been stated that failure to look at all constitutes negligence as a matter of law while the question as to whether one who looks sees all that he should see is one of fact for the jury."

In the McDowall case we also said, on the authority of Blashfield, that a motorist cannot say that he looked, but failed to see what was clearly visible, or could have been seen by the exercise of ordinary care.

According to the defendant's testimony in the instant case, after she came into the courtyard she first placed groceries in her son's car, then backed and reparked her father's car facing it to the west, after which she went back across the area to the accident vehicle and backed it out. If a jury elected to believe this testimony, it would realize that defendant had several moments to see the children and that during part of the time she would have been looking in the direction of the place where both the mother and sister of Pamela said the child was with Diane and Tommy. Yet defendant, having this clear opportunity to see and be aware of the little child's presence in the area, testified she saw only the sister and brother.

■■ This presents the very exemplification of the rule of law that a person is charged with seeing that which is there to be seen the same as though the person looked and saw what was there to be seen. Taking together the statements of defendant as to her actions and the statements of Pamela's mother and sister as to the presence of the unfortunate child, there was substantial evidence to charge defendant with the duty of seeing what was there for

defendant to see, and the failure to do so would justify a jury in concluding defendant was negligent.

On the whole, the evidence in this case is such that a jury could believe that if Mrs. Neighbors had looked before backing, as she said she did, she would have seen three children, and that, if she had looked over her right shoulder while backing, she would have seen Pamela leave her sister and move into the path of her vehicle. See Johnson v. Barnes, 55 Wash.2d 785, 350 P.2d 471, 473.

Human nature being what it is, it is understandable that witnesses sometimes color their testimony, or at least tell their stories in a light more favorable to one side or the other. Thus it is that juries are frequently instructed to the effect that in judging the credibility of witnesses the jury should take into consideration the interest, if any, which any witness may have in the outcome of the trial. 5 Reid's Branson Instructions to Juries, § 3309, p. 23 (1961 Pocket Supplement).

In the case before us, the jury would have a right to accept as true those parts of Mrs. Neighbors' testimony which are favorable to plaintiff's claim and to reject those parts which the jury thought had been colored to excuse her conduct. Merback v. Blanchard, 56 Wyo. 152, 105 P.2d 272, 274, rehearing denied 56 Wyo. 286, 109 P.2d 49.

The attorneys for Mrs. Neighbors relied quite heavily upon Feltner v. Bishop, Wyo., 348 P.2d 548, construing it to hold that a driver is not liable for striking a child whose "presence could not reasonably be foreseen." Herein lies the crux of the case now being decided. It was for the jury to determine whether the presence of the child could have been reasonably foreseen.

Indeed, Justice Harnsberger, in the Feltner case, based that decision upon the fact that the trial court (without a jury) had apparently found the driver's failure to see was not due to his failure to look. He thereby in effect recognized, and predicated the Feltner decision upon, the rule that the

question as to whether a motorist had been negligent was for the trier of fact.

If we confine ourselves only to those cases decided since the Feltner case, in 1960, and also to the cases involving small children struck by a motor vehicle, it is fair to say scores of authorities are noted for the proposition that the question of a motorist's negligence is for the jury, while only in a relatively few instances have appellate courts found the evidence insufficient to present a case for the jury.

The following cases, with facts similar to those here involved, are authority for adherence to the principle that a jury must decide the issue of negligence: Daun v. Truax, 56 Cal.2d 647, 16 Cal.Rptr. 351, 365 P.2d 407, 409; Morris v. Musick, 188 Kan. 197, 362 P.2d 68, 70; Flurry v. Dees, Miss., 128 So.2d 873, 874; Cheney v. Wheeler, 122 Vt. 295, 170 A.2d 642, 643; Zadan v. Cohen, Fla.App., 127 So.2d 466, 467; Grayson v. Yarbrough, 103 Ga.App. 243, 119 S.E.2d 41, 43; Stowers v. Carp, 29 Ill.App.2d 52, 172 N.E.2d 370, 375–376; Saunder v. Hall, Munic.Ct.App.D.C., 166 A.2d 492, 493; Parker v. Gunther, 122 Vt. 68, 164 A.2d 152, 155; Johnson v. Barnes, 55 Wash.2d 785, 350 P.2d 471, 474; Geiger v. Schneyer, 398 Pa. 69, 157 A.2d 56, 59.

The Kansas court, in Morris v. Musick, supra, at 362 P.2d 70, went beyond the matter of simple negligence and held that whether a motorist was grossly and wantonly negligent in backing his automobile over a neighbor's child playing in the motorist's driveway was a jury question.

A number of other decisions have stressed the fact that where the motorist is aware that children were in the habit of playing around the area, there is a duty imposed on the operator of the vehicle to exercise a higher degree of care than under ordinary circumstances. Stowers v. Carp, supra, at 172 N.E.2d 375–376; Hildreth v. Key, Mo. App., 341 S.W.2d 601, 605–606; Parker v. Gunther, supra, at 165 A.2d 154–155; Gabbard v. Knight, 202 Va. 40, 116 S.E.2d 73, 77; Johnson v. Barnes, supra, at 350 P.2d 473; Geiger v. Schneyer, supra; Dungan

v. Brandenberg, 72 Ariz. 47, 230 P.2d 518, 521. See also Flurry v. Dees, supra. As we have already pointed out, Mrs. Neighbors acknowledged there were children playing in the area here involved from time to time.

This court has repeatedly held that it is only in the clearest of cases where the facts are undisputed, and it is plain that all intelligent men can draw but one inference from them, that the question of negligence is one of law for the court. Cimoli v. Greyhound Corporation, Wyo., 372 P.2d 170, 174. Or, as expressed in Dungan v. Brandenberg, supra, at 230 P.2d 522, a verdict will not be directed where the evidence is conflicting or where there is room for fair and sensible men to differ in their conclusions.

Appellate courts are sometimes accused of giving lip service to a principle of law and then, by a process of so-called distinguishment, avoiding the principle when it feels inclined to do so. If we undertook in this case to say Mrs. Neighbors' failure to see Pamela *was not due* to her failure to look, we would be giving lip service only to the principle that this determination is for the jury.

On the other hand, we are not to be understood as saying Mrs. Neighbors' failure to see Pamela *was due* to her failure to look. We simply say the evidence was in conflict and the matter presents a question for the jury. The case must for this reason be reversed and remanded for a new trial.

Reversed and remanded.

Mr. Justice PARKER, dissenting.

The majority opinion would seem to rest principally on the following statement contained therein, "The mere fact, standing alone, that the vehicle hit the child inside an open courtyard without the driver realizing the child was present in the courtyard is sufficient to question the driver's insistence that she was looking to the rear and right rear as she backed," a pronouncement for which no legal authority is cited. Moreover, the testimony fails to show that the courtyard was open. The record discloses no substantial evidence of negligence which would justify the submission of this cause to the jury.

We have previously held:

"When it clearly appears to the trial court that upon the evidence produced, giving to it its full probative force, together with all reasonable inferences deducible therefrom, it fails to establish in law a claim, * * * it is not only the right but the duty of the court to so instruct the jury. * * *" Calkins v. Wyoming Coal Mining Co., 25 Wyo. 409, 171 P. 265, 267.

Here the plaintiff was entitled to every reasonable or legitimate inference which might be drawn from the evidence, but an inference of negligence may not be based upon mere surmise, conjecture, guess, speculation, or probability. O'Keefe v. Cheyenne Chamber of Commerce, 56 Wyo. 170, 105 P.2d 279; Galicich v. Oregon Short Line R. Co., 54 Wyo. 123, 87 P.2d 27.

I would affirm.